**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clarence Edwin RINKE, and Duane Keith Nevins, Defendants-Appellants.**

**Nos. 85–1233, 85–1234.**

United States Court of Appeals, Tenth Circuit.

Dec. 2, 1985.

James L. Eisenbrandt, Overland Park, Kan. (Wesley M. Norwood of Riling, Norwood, Burkhead & Fairchild, Lawrence, Kan., with him on the briefs) of Morris, Larson, King, Stamper & Bold, Overland Park, Kan., for defendants-appellants.

Richard L. Hathaway, Asst. U.S. Atty., Kansas City, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., Wichita, Kan., with him on briefs), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, BARRETT, Circuit Judge, and GREENE, District Judge.[*]

BARRETT, Circuit Judge.

Defendants Clarence Rinke (Rinke) and Duane Nevins (Nevins)[1] appeal their convictions and sentences for violating 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to distribute marijuana. Defendant Nevins also appeals from his conviction and sentence for violating 18 U.S.C. § 1952(a)(3) (the Travel Act), travel in interstate commerce with intent to promote, manage or carry on an unlawful activity.

In April of 1982, Carl Frederick Pieper (Pieper) became a cooperating informant for the Orlando, Florida, Police Department for the purpose of assisting the police in prosecuting a long-time acquaintance, Duane Nevins. Pieper had been acquainted with Nevins since 1964 when they were students in a music camp at Michigan State University. In 1970, Pieper became re-acquainted with Nevins through common friends in the Lawrence, Kansas, area. Pieper and Nevins maintained a casual relationship until 1981. At that time, Pieper testified that he was first contacted by Nevins concerning drug trafficking. This discussion took place in Pieper's home in Orlando, Florida, while Nevins was visiting Pieper's step-daughter, Krista, with whom Nevins maintained a close, personal relationship.

Pieper, an electrical engineer by training and employed by Martin-Marietta in Orlando, became concerned about Nevins' drug trafficking activities. In an apparent effort to gather evidence against Nevins, Pieper placed a recording device on his Orlando, Florida telephone in April, 1982. This was done upon his own initiative and not at the direction of the Orlando Police Department. Pieper kept notes about his conversations with Nevins in addition to some of the recordings. Most of these conversations took place between Pieper and Nevins from their respective homes in Orlando, Florida, and Baldwin, Kansas.

On April 18, 1982, Pieper recorded several conversations between Rinke and Nevins while Nevins was visiting Pieper in Orlando. Pieper was present during these conversations and overheard all of Nevins' comments. Through these conversations, Pieper learned that Rinke was anxious to have Nevins come to Miami. Also recorded by Pieper on April 18, 1982, were conversations between Nevins and several airlines regarding plane reservations for flights from Orlando to Miami. The defendants were unaware that their conversations were being recorded.

Following the conversations on April 18, 1982, Nevins discussed with Pieper the possibility of Pieper driving a load of marijuana from Florida to Kansas. On April 26, 1982, while Nevins was visiting Rinke in Miami, he called Pieper and told him to come to Miami as soon as possible. Pieper flew to Miami, met with the defendants, and was provided a rented 1982 Pontiac Bonneville. Defendants told Pieper that the trunk contained marijuana and that he should not open it even if he had a flat tire. Pieper was given $500 and a map which showed a route from Miami to Baldwin, Kansas.

Pieper began the trip to Kansas on the evening of April 26, 1982. He stopped at a point just north of Miami for the night. The next morning at 9:00 a.m., Pieper called inspector Dennis Dale of the Orange

---

[*] Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting of designation.

1. Referred to collectively as defendants.

County Sherriff's Department in Orlando and told him that he was transporting marijuana for the defendants. Dale told him to proceed to the Turkey Lake Plaza near Orlando. At approximately 12:30 p.m., Pieper arrived at Turkey Lake Plaza and was thereafter met by several Orange County Sheriff's officers. Pieper told them that the trunk contained marijuana. He provided the car keys to the officers and the trunk was opened. The officers discovered two large bags and a strong odor of marijuana. The bags were opened and a field test was conducted upon the substance contained in the garbage bags. The field test revealed that the substance was, in fact, marijuana.

Defendants were arrested and tried before the district court of the District of Kansas upon a two count Superseding Sealed Indictment returned by a federal grand jury. Trial to the court was held on September 17, 1984. The district court entered its Memorandum and Order finding the defendants guilty as charged on November 27, 1984. On January 28, 1985, a sentencing hearing was held and the defendants were sentenced for their respective crimes.

The defendants jointly raise the following issues for our review, i.e., whether the district court erred: (1) in ruling that venue was proper in the District of Kansas; (2) in finding defendant Nevins guilty on Count II, violation of the Travel Act, because the Government failed to prove the "business enterprise" element of the crime; (3) in allowing Pieper to rely on notes while testifying to telephone conversations between himself and the defendants; (4) in denying defendants' motions to suppress all evidence after April 18, 1982, as the fruit of illegal electronic surveillance; (5) in denying defendants' motions to sever their trials; and (6) in denying defendants' motions for judgment and acquittal on the grounds of a fatal variance between the beginning point of the conspiracy alleged in Count I of the indictment and proof at trial.

## I.

Defendants contend that the district court erred in ruling that venue was proper in the District of Kansas. Specifically, defendants argue that the Government's evidence was insufficient to establish venue in Kansas for both Counts I and II.

Rule 18 of the Federal Rules of Criminal Procedure sets forth the proper place of prosecution and trial for a criminal offense:

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district *in which the offense was committed.* The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

Fed.R.Crim.Pro. 18 (emphasis supplied). "Venue in federal criminal cases is a question of fact which is part of the prosecution's case." *Wilkett v. United States*, 655 F.2d 1007, 1011 (10th Cir.1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Unlike other facts in the prosecution's case, however, venue may be proven by mere preponderance of the evidence. *Id.* We agree with the United States Court of Appeals for the Eleventh Circuit that the standard of review for whether venue lies in a particular district is whether, viewing the evidence in the light most favorable to the Government and making all reasonable inferences and credibility choices in favor of the finder of fact, the Government proved by preponderance of direct or circumstantial evidence that the crimes charged occurred within the district. *United States v. Males*, 715 F.2d 568, 569 (11th Cir.1983). Applying these standards, we affirm the district court's ruling that venue was proper in the District of Kansas.

We have held that when the offense charged is conspiracy, as in Count I of this case, "venue as to prosecution of all members of [the] conspiracy lies either in the jurisdiction in which the conspiratorial agreement was formed or in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of

the conspirators." *United States v. Smith,* 692 F.2d 693, 697 (10th Cir.1982) (citations omitted). In *United States v. Smith,* defendant Smith was convicted of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 (1976). Smith contended that venue was improper in the District of Wyoming because the alleged crime was not committed there and he had never been in Wyoming. We held in *Smith* that venue was proper in Wyoming whether or not the defendant had ever been there himself because one of the co-conspirators performed overt acts in Wyoming in furtherance of the conspiracy. Applying the rule in *Smith,* the district court in the case at bar found that several overt acts were committed in Kansas by Nevins in furtherance of the conspiracy charged in Count I.

Defendants contend that inconsistencies in Pieper's testimony made any inference that the defendants were in Kansas unreasonable. Defendants maintain that Nevins never used his home telephone in Baldwin, Kansas, to discuss drug transactions. Moreover, they maintain any toll records of phone calls between Pieper's and Nevins' homes were the result of telephone conversations between either Pieper and his stepdaughter, Krista, who was staying with Nevins during this time, or Pieper and Nevins regarding Krista.

■ After reviewing the record, we are not persuaded by defendants' contentions. It is undisputed that Nevins was a resident of Baldwin, Kansas. Although Nevins argues he used neither his home telephone for drug transactions nor coded words in his conversations with Pieper, Pieper testified he was told by Nevins that in telephone conversations he "should not refer to trafficking of marijuana or any illegal acts, but refer to them in an implicit although obvious to us manner." (R.Vol. VIII, p. 37.) Despite Nevins' contention that there was no evidence any of these alleged drug trafficking conversations were made from Baldwin, Kansas, the district court reasonably inferred that one or more of the alleged conversations did take place between Nevins and Pieper from Nevins' Kansas home.

■ With respect to Count II, the Travel Act charge, we have held that when the offense charged is a violation of the Travel Act, venue lies in any district in which the travel occurred. *United States v. Blitstein,* 626 F.2d 774, 783 (10th Cir.1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981). Applying the *Blitstein* rule, the district court in this case found that venue was proper in the District of Kansas because Nevins traveled from Kansas to Florida to facilitate the distribution of marijuana. (R.Vol. II, p. 226.)

Defendants contend there was no evidence Nevins traveled from Kansas to Florida to facilitate the distribution of marijuana. Here again, the district court reasonably inferred that Nevins traveled from his home in Kansas to Florida on April 18, 1982. As we noted in *Blitstein, supra,* venue is proper for purposes of the Travel Act even in the district in which the travel originated.

## II.

Defendants contend that the district court erred in finding Nevins guilty of violating 18 U.S.C. § 1952(a)(3), the Travel Act. Specifically, Nevins contends the Government failed to prove an element of the crime: that interstate travel was undertaken to facilitate a *business enterprise* involving narcotics or controlled substances.

Count II of the grand jury's Superseding Sealed Indictment charges Nevins with "travel in interstate commerce from the State of Kansas with intent to promote ... an unlawful activity, to-wit the business enterprise involving distribution of a controlled substance ... in violation of Title 18 United States Code, Section 2, 1952(a)(3)." (R.Vol. I, p. 78). Section 1952(a)(3) provides as follows:

(a) Whoever travels in interstate or foreign commerce or uses any facility in

interstate or foreign commerce, including the mail, with intent to—

\* \* \* \* \* \*

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any *unlawful activity*, and thereafter performs or attempts to perform any of the acts specified...

shall be fined not more than $10,000 or imprisoned for not more than five years or both.

18 U.S.C. § 1952(a)(3) (1982) (emphasis supplied). Subsection (b) defines "unlawful activity" as follows:

(b) As used in this section "unlawful activity" means (1) any *business enterprise involving* gambling, liquor on which the federal excise tax has not been paid, *narcotics or controlled substances* (as defined in Section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the state in which they are committed or of the United States....

18 U.S.C. § 1952(b) (1982) (emphasis supplied).

■ It is clear from the statutory language that the "unlawful activity" the Travel Act is intended to prohibit, when the underlying offense involves narcotics or controlled substances, is a *business enterprise. United States v. Pauldino*, 443 F.2d 1108 (10th Cir.), *cert. denied*, 404 U.S. 882, 92 S.Ct. 204, 30 L.Ed.2d 163 (1971). Although *Pauldino* involved a gambling charge, our reasoning there is applicable in the case at bar: "[T]he purpose of the statute is to get at those who engage in illegal gambling as a business and who utilize facilities of interstate commerce in furtherance of this business...." *Id.* at 1111. Moreover, we have recently considered the term "business enterprise" under the Travel Act and we have defined that term to mean, "a continuous course of conduct rather than a sporadic casual involvement in the proscribed activity." *United States v. Kendall*, 766 F.2d 1426, 1434 (10th Cir.1985).

Count II of the grand jury's Superseding Sealed Indictment properly sets out the business enterprise element of a Travel Act offense involving narcotics or controlled substances. Defendants timely requested the district court to make specific findings pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure. The district court, however, did not make any finding as to whether Nevins was engaged in a "business enterprise" as required under the Travel Act. The district court relied on our opinion in *United States v. Stevens*, 612 F.2d 1226, 1231 (10th Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980) as a statement of the elements for a Travel Act offense. Although the underlying offense in that case also involved narcotics or controlled substances, we neglected to clearly set forth the "business enterprise" element of the crime.

■ As noted above, the defendants did make a timely request for special findings. "Although these findings may be written or gleaned from comments from the bench, they must afford a basis for intelligent appellate review." *United States v. Pinner*, 561 F.2d 1203, 1206 (5th Cir.1977), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1018, 59 L.Ed.2d 73 (1979). We have carefully reviewed the record and the findings and conclusions of the district court. There is no finding in the record to afford a basis for intelligent appellate review on the question of whether or not Nevins' unlawful activity involving narcotics and controlled substances constituted a "business enterprise."

We have said previously, "When a trial court has failed to express its views on a controlling question, it is appropriate for the appellate court to remand the case to that court, rather than deal with the merits of the question on appeal." *United States v. Conners*, 606 F.2d 269, 273 (10th Cir. 1979). Therefore, we must remand Count II of the indictment to the district court to find whether or not Nevins was engaged in

a business enterprise pursuant to 18 U.S.C. § 1952(b) (1982).

### III.

Defendants contend that the district court erred in allowing the witness Pieper to use notes while testifying regarding telephone conversations with them. At trial Pieper was allowed to refer to the notes he kept regarding his conversations and activities with the defendants. Defendants maintain the district court confused the application of Rule 803(5) (recorded recollection) and Rule 612 (writing used to refresh memory) of the Federal Rules of Evidence to their prejudice when Pieper was erroneously permitted to both rely on his notes and embellish them while testifying.

It is unclear from the record upon what legal basis the district court permitted Pieper to rely on his notes while testifying. Defendants assert that Pieper's use of the notes was permitted as past recollection recorded under Rule 803(5). The Government asserts that Pieper's testimony, based on the notes, was permitted by the court as memory refreshed by a writing under Rule 612. Regardless of the basis for admitting evidence, "We may affirm the rulings on admission of evidence if that evidence is admissible under any of the Federal Rules of Evidence; this court is not bound by the evidentiary basis relied upon by the trial court for the admission of the challenged evidence." *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1331 (10th Cir.1984). We hold that Pieper's use of his notes while testifying was permissible under Rule 612 as a writing used to refresh memory.

Rule 612 provides in relevant part as follows:

> [I]f a witness uses a writing to refresh his memory ... while testifying ... an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness....

Fed.R.Evid. 612. The district court enjoys broad discretion in determining whether a witness using a writing to refresh memory is offering a writing for the truth of something the witness can no longer recall. *Doty v. Elias,* 733 F.2d 720 (10th Cir.1984).

Prior to ruling on whether Pieper could rely on his notes to testify, the court engaged in the following colloquy with him:

> THE WITNESS: I can testify as to what is in the notes; however, they are notes to myself, and they perhaps require some interpretation by myself to make them clear.
>
> THE COURT: Did I also understand, though, as Mr. Haney said, you have some recollection that these phone calls were made, don't you?
>
> THE WITNESS: Of course. I don't remember the times and the dates of specific calls or what somebody did at a particular date and time, and said there was a telephone conversation made at that time. I do not necessarily remember the content of that particular conversation.
>
> THE COURT: Do you remember the general contents of the calls?
>
> THE WITNESS: Yes, of course.
>
> THE COURT: Overruled. You may go ahead.

(R.Vol. VIII, p. 32.) It appears from the above exchange that the district court overruled the defendants' objections because Pieper was only using his notes to refresh his memory. Immediately after the court overruled the defendants' objections, questions by the Government's attorney were posed consistent with the theory that Pieper was using his notes merely to refresh his memory:

> Q. Mr. Pieper, upon reading your notations of November 2 concerning the phone call with Mr. Rinke, does that refresh your memory at all concerning that conversation?
>
> A. Yes.
>
> Q. As you read those notes, do you in fact recall that conversation?
>
> A. Yes.

*Id.* On cross-examination, Pieper admitted he did at times read from his notes while testifying. He also admitted interpreting the notes and adding testimony independent of their contents. (R.Vol. VIII, p. 72).

In *Doty v. Elias, supra,* we were faced with a similar evidentiary problem as the one in the instant case. In *Doty,* although the objection was made on a different ground, the factual situation was identical: witnesses were allowed to refer to notes while testifying. It was established in *Doty* that the witnesses had independent recollections of prior events after being permitted to refresh their memories by consulting their notes. We concluded upon the record that the district court properly permitted the witnesses to use their notes while testifying in accordance with Rule 612. We cited with approval the leading case of *United States v. Riccardi,* 174 F.2d 883, 886 (3rd Cir.), *cert. denied,* 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949), for the essential distinction between present recollection revived and past recollection recorded:

> The primary difference between the two classifications is the ability of the witness to testify from present knowledge: where the witness' memory is revived, and he presently recollects the facts and swears to them, he is obviously in a different position from the witness who cannot directly state the facts from present memory and who must ask the court to accept the writing for the truth of the contents because he is willing to swear, for one reason or another, that its contents are true.

In the present case, witness Pieper was permitted to use notes in order to refresh his memory. The fact that he was able to embellish his notes and to testify regarding subjects not explicitly contained in his notes indicates he had an independent recollection. This fact, coupled with the opportunity defense counsel had to cross-examine Pieper and/or to introduce the notes into evidence and attack Pieper's credibility vitiates the prejudice, if any, to the defendants when the court allowed Pieper to rely on his notes while testifying. We agree

with the analysis one commentator has offered regarding the application of Rule 612 in this type of situation:

> [I]t would seem that a witness may recognize from present memory the correctness of successive facts set out in the memorandum, but that he may be unable, despite this recognition, to detail those facts from memory without continuing to consult the writing. Accordingly, the statement that a witness once refreshed must speak independently of the writing seems too inflexible, and it is believed that the matter is discretionary and that the trial judge may properly permit the witness to consult the memorandum as he speaks, especially where it is so lengthy and detailed that even a fresh memory would be unable to recite all the items unaided.

C. McCormick, *McCormick on Evidence* § 9 (3rd ed. 1984) (footnotes omitted).

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." Fed.R.Evid. 103(a). Assuming *arguendo* that the district court had confused Rules 803(5) and 612, the defendants have failed to show how a substantial right was adversely affected. Trial was before a judge, not a jury, and therefore jury confusion is not an issue. Defendants had ample opportunity to cross-examine Pieper, to introduce his notes into evidence, and to attack his credibility. We therefore hold that the district court did not err in permitting Pieper to use his notes while testifying.

## IV.

Defendants contend that the district court erred in refusing to suppress all evidence after April 18, 1982, on the ground the Government failed to show that the evidence was not tainted by illegal electronic surveillance. On April 18, 1982, Pieper tape-recorded several telephone conversations between defendants Nevins and Rinke from his home in Orlando, Florida. These conversations took place while Nev-

ins was staying at Pieper's Orlando residence. Pieper was present during the conversations and overheard all of defendant Nevins' statements. At that time Pieper learned that Rinke was anxious to have Nevins come to Miami. Also recorded by Pieper on April 18, 1982, were conversations between Nevins and several airlines regarding plane reservations to fly between Orlando and Miami. While the defendants were unaware that their conversations were being recorded, Pieper was present during these conversations and heard Nevins' statements. Pieper made notes regarding these statements. These notes were turned over to the Orange County Sheriff's Office at the end of the investigation, in late April of 1982.

Defendants filed a pre-trial motion to suppress the evidence based on illegal overhearing and recording by Pieper in violation of 18 U.S.C. § 2510, *et seq.*, and 47 U.S.C. § 605. The Government did not dispute much of defendants' motion. The Government agreed that the recordings were illegally made and had no objection to suppressing them. The Government disagreed with the defendants, however, that the evidence collected after April 18, 1982, should be suppressed as the fruit of illegally recorded conversations.

The district court suppressed the tape recordings made on April 18, 1982, but the court refused to suppress evidence obtained after April 18, 1982. The court accepted the Government's arguments that (1) evidence obtained after April 18, 1982, would have been inevitably discovered by lawful means; (2) the recorded phone call of April 18, 1982, provided little, if any, information that ultimately led to the indictment in this case; and (3) the essence of the conversations was learned by Pieper by his lawful presence in the room at the time and not by a subsequent listening of the tape recordings. (R.Vol. I, p. 154.)

■ We begin by noting that a district court's ruling on a motion to suppress will be affirmed unless shown to be clearly erroneous. *United States v. Gabriel*, 715 F.2d 1447, 1450 (10th Cir.1983). Presum-

ing *arguendo*, as defendants urge, that the Government had the burden of showing the post-April 18, 1982 evidence was free from taint and was the result of independent sources, we find the record sufficient to support such a showing. The district court was free to accept Pieper's testimony that his wiretap did not reveal any significant information that he had not overheard directly while present in the room at the time Nevins discussed his plans with Rinke. Even assuming that Pieper obtained information from the wiretap, Pieper received the information concerning the marijuana in the trunk of the automobile from Nevins and Rinke directly, after April 18, 1982, when they provided him with the car, informed him of the contents of its trunk, and instructed him to drive the car to Kansas. As a result, law enforcement officers inevitably learned, by lawful means, about the contents of the trunk of the car driven by Pieper. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). We therefore hold that the district court was not clearly erroneous in refusing to suppress the evidence obtained subsequent to April 18, 1982.

### V.

Defendants contend that the district court erred in denying their motions for severance. Specifically, defendants contend that it was error for the district court to admit, in a joint trial, the marijuana trafficking discussions between Pieper and Nevins occurring prior to April 1, 1982; the date on which the indictment charges that the conspiracy commenced. Moreover, defendants contend it was error to refuse to sever their trials because of the great disparity in the weight of the evidence against Nevins and Rinke and the variations in the charges between the defendants.

Pre-trial motions were filed by Rinke and Nevins and after careful consideration, these motions were denied by the district court. The district court specifically considered the defendants' argument that extrajudicial statements made by one co-defendant which inculpate another co-defend-

ant violate the confrontation clause when the declarant elects not to take the stand and is therefore unavailable for cross-examination. See *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The district court specifically found there were no *Bruton* problems in this case.

At trial Nevins renewed his motion to sever when Pieper testified regarding his acquaintance with Rinke. (R.Vol. VIII, p. 19). At the same time, counsel for Rinke renewed his motion to sever. The district court granted the defendants' continuing objection to the testimony offered by Pieper regarding his pre-April, 1982 communications with Rinke and Nevins. The district court subsequently ruled that the Government had laid a proper foundation to establish conspiracy and that the statements objected to were made in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E).

■ The general rule in our circuit is that persons jointly indicted should be tried together. *United States v. Hopkinson,* 631 F.2d 665 (10th Cir.1980), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981). Defendants have the burden of clearly showing prejudice resulting from a joint trial. *Id.* In determining the merits of a motion to sever, the district court must weigh the prejudice caused by the joinder against considerations of economy and expedition in judicial administration. *United States v. Walton,* 552 F.2d 1354 (10th Cir.), *cert denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). Finally, the decision of whether to sever rests in the sound discretion of the trial court. *United States v. Rogers,* 652 F.2d 972 (10th Cir.1981).

■ After carefully reviewing the record, we are satisfied that the arguments raised by the defendants were carefully considered by the district court. The court did not abuse its discretion in refusing to sever their trials. Even if we were to find that the district court abused its discretion by permitting Pieper to testify about statements made by both defendants prior to April, 1982, the substance of those statements did not prejudice the defendants.

## VI.

■ Defendants raise as a final issue the district court's denial of their motions for judgment of acquittal on the ground that there was a fatal variance between the beginning point of the conspiracy alleged in Count I of the indictment and proof at trial. Specifically, defendants argue that allowing the witness Pieper to "infer" and "interpret" conversations prior to April 1, 1982, broadened the time period of the conspiracy alleged in the indictment. Defendants concede, however, that a fatal variance occurs only when an accused could not have anticipated from the indictment what evidence would be presented at trial or when a conviction based upon the indictment would not bar subsequent prosecution. *United States v. Morris,* 623 F.2d 145 (10th Cir.), *cert. denied,* 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 609 (1980). In assessing a variance claim, "the key inquiry is not whether there has been such a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." *Id.* at 149 (quoting *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935)).

We find no merit to defendants' contention that there was a fatal variance. There was an open file agreement in this case, and the defendants had access to the Government's evidence considerably in advance of trial. Trial was to the court and not a jury. Accordingly, we are not concerned here with jury confusion. Finally, as mentioned above, our review of the record fails to disclose prejudice to the defendants through the admission of testimony regarding pre-April 1, 1982 conversations.

Affirmed in part and remanded to the district court for further findings consistent with this opinion.