**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3985
_____

DR. JEFFREY DAVID ISAACS,

                Appellant

v.

ARIZONA BOARD OF REGENTS; DR. MARC
BERTRAND;  DR. JIM YONG KIM; EDWARD
KAPLAN; DR. AMY WAER; MARY HITCHCOCK
MEMORIAL HOSPITAL; UNIVERSITY OF ARIZONA
HEALTH SCIENCES CENTER; JOHN DOE #1 & #2;
NEW HAMPSHIRE BOARD OF MEDICINE;
TRUSTEES OF DARTMOUTH COLLEGE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 13-cv-05708)
Chief District Judge: Honorable Petrese B. Tucker

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2015

Before: FISHER, KRAUSE and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 7, 2015)
_____

OPINION[*]
_____


PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jeffrey Isaacs appeals from an order of the District Court dismissing his amended complaint. For the reasons that follow, we will affirm.

On September 30, 2013, Isaacs filed suit in the United States District Court for the Eastern District of Pennsylvania and later amended his complaint. Isaacs alleged that, after graduating from a Caribbean medical school in 2010, he was accepted to a surgery residency at the University of Arizona Health Sciences Center. After he began this residency, he believes someone communicated with University of Arizona officials about his "confidential" attendance at and departure from a California medical school that predated his attendance at the Caribbean medical school. Isaacs claimed that he was told on the second day of his surgical residency by Program Director Amy Waer, M.D. that he was not qualified for the residency, but, based on his suspicion that University of Arizona officials improperly had communicated with his California medical school, he decided to resign within six weeks of his arrival. In his view, University of Arizona officials constructively terminated him. He did not sue the University at this time.

In 2011, Isaacs accepted a position as a psychiatry resident at Dartmouth College and the Mary Hitchcock Memorial Hospital in New Hampshire. As part of his application for the residency, Isaacs submitted an application for a training license to the New Hampshire Board of Medicine, and on that application he listed his prior surgical residency at the University of Arizona. Isaacs began his psychiatry residency in June, 2011. On February 3, 2012, Isaacs, who suffers from a neuropsychiatric illness, filed a disability discrimination and wrongful termination complaint pro se in the United States District Court for the District of New Hampshire, see Isaacs v. Dartmouth-Hitchcock Medical Center, D.C. Civ. No. 12-cv-00040, against Dartmouth College and the Mary

2

Hitchcock Memorial Hospital. Dartmouth and the Hospital were represented by Edward M. Kaplan.

Isaacs was subjected to an investigation as a result of his failure to disclose, on his 2010 Electronic Residency Application Service ("ERAS") application, his prior enrollment at the California medical school, his prior residency experience at the University of Arizona, and his Arizona training license. In March 2012, Isaacs was terminated from his Dartmouth psychiatry residency, in part because he omitted this information when he applied to Dartmouth and because he did not disclose his California history on his New Hampshire training license application. At his request, he was granted the opportunity to participate in the Fair Hearing process by Dr. Marc Bertrand, a Dartmouth dean. Hearings were scheduled in New Hampshire but Isaacs declined to attend; he had returned home to Pennsylvania.

The New Hampshire Board of Medicine also commenced an investigation to determine whether Isaacs committed professional misconduct in failing to disclose that he had attended the California medical school and the circumstances of his departure from that school. The Board scheduled an adjudicatory/disciplinary hearing against Isaacs and sent him a Notice of Hearing, which ordered him to travel to Concord to participate in the proceeding and, if appropriate, be subjected to sanctions. Isaacs declined and his New Hampshire training license was revoked.

In April 2014, the District Court in Isaacs' New Hampshire case granted the defendants' motion for summary judgment. The Court of Appeals for the First Circuit affirmed on January 5, 2015, C.A. No. 14-1544.

3

The amended complaint that Isaacs filed in the Eastern District of Pennsylvania in September 2013 contained four tort or contract causes of action and a request for injunctive relief. Isaacs alleged in Count I that all defendants, other than the New Hampshire Board of Medicine, conspired against him to terminate his medical training in New Hampshire. Count II alleged that all defendants, except the Board of Medicine, intended to cause him severe emotional distress. Count III alleged that the Trustees of Dartmouth College and the Mary Hitchcock Memorial Hospital breached a contract by offering him a hearing at an inconvenient location (New Hampshire) after he had already been terminated, and Count IV alleged that the Dartmouth defendants obstructed justice in his New Hampshire litigation. Count V alleged that Isaacs is entitled to injunctive relief in the form of an order enjoining the defendants from continuing their conspiracy to deny him medical training. As a result of the unlawful conspiracy, Isaacs claimed, his federal training subsidy has been exhausted and he has no further opportunity to become a licensed physician in the United States. Moreover, he contended that information relating to his attendance and departure from the California medical school is confidential pursuant to a settlement agreement[1] and under the Family Educational Rights & Privacy Act ("FERPA"), 20 U.S.C. § 1232g.

With respect to diversity jurisdiction in the Pennsylvania federal court, Isaacs alleged that he completed his ERAS applications to the University of Arizona and Dartmouth College in Pennsylvania; that the Dartmouth College defendants mailed two letters to him in Pennsylvania, one terminating him from his psychiatry residency and one offering him a fair hearing in New Hampshire concerning this termination; that he

---

[1] Isaacs filed suit in federal court in California against his medical school. The case settled.

completed license application documents while in Pennsylvania which later became the subject of misconduct allegations made by the New Hampshire Board of Medicine; and that the Board mailed a letter to his home in Pennsylvania, demanding that he attend a hearing in New Hampshire over whether it was an improper action on his part not to disclose his California history on his license application.

All defendants -- Marc Bertrand, Edward Kaplan, the Mary Hitchcock Memorial Hospital, former Dartmouth President Jim Yong Kim, the Trustees of Dartmouth College, the Arizona Board of Regents, the University of Arizona Health Sciences Center, Dr. Amy Waer, and the New Hampshire Board of Medicine -- filed motions to dismiss the amended complaint based on a lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or sovereign immunity. After Isaacs submitted his opposition to these motions, the District Court, in an order entered on August 25, 2014, granted the motions, holding that personal jurisdiction in the Eastern District of Pennsylvania was lacking as to seven of the defendants, and that the Arizona Board of Regents and University of Arizona Health Sciences Center are protected from suit in federal court by the Eleventh Amendment.

Isaacs appeals. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's determination to grant a motion to dismiss. See Spruill v. Gillis, 372 F.3d 218, 226 (3d Cir. 2004). A plaintiff must allege sufficient facts to establish personal jurisdiction when a defendant raises the defense of a lack of personal jurisdiction. See Mellon Bank v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). If the defendant contradicts the plaintiff's allegations through opposing affidavits, as the defendants did here, a plaintiff must present particular evidence in support of personal

5

jurisdiction. Id. The District Court's findings of facts with respect to personal jurisdiction are reviewed for clear error. Stranahan Gear Co., Inc. v. NL Industries, Inc., 800 F.2d 53, 56 (3d Cir. 1986).

We will affirm. A federal court sitting in diversity must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant, and then must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment. See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998). Because Pennsylvania has chosen to exercise jurisdiction to the fullest extent possible, 42 Pa. Cons. Stat. Ann. § 5322(b), the federal due process principle of "minimum contacts" with the forum state and the requirement that the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice" control. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Such minimum contacts are established when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

These due process principles have been characterized as falling under either specific or general jurisdiction. General jurisdiction grants courts the ability to hear "any and all claims" against out-of-state defendants "when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Op., S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). General jurisdiction is invoked when the plaintiff's cause of action arises from the defendant's

6

non-forum related activities.  Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996) (internal quotation marks and citation removed).  Specific jurisdiction, in contrast, is present where the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled into court" in that forum."  Id. at 151 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  The exercise of specific jurisdiction is permissible where: (1) the defendant purposely directed his activities at the forum state; (2) the plaintiff's claim arises out of and relates to at least one of those specific activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice.  See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).

A separate route to specific personal jurisdiction is available to victims of intentional torts; this is the "effects test" stemming from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783, 788-90 (1984), which holds that intentional torts aimed at a forum state and causing injury within that state can subject a tortfeasor to jurisdiction in that state.  Id.  The effects test requires the plaintiff to show that: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."  Marten, 499 F.3d at 297 (quoting IMO Indus., Inc., 155 F.3d at 265-67).

In analyzing the general and specific personal jurisdiction and Calder effects test issues raised by Isaacs' suit against the New Hampshire and Arizona defendants, the District Court made thorough findings of fact with respect to each of the seven

7

defendants who were dismissed for lack of personal jurisdiction, and then applied those facts to the governing law. Because the parties are familiar with the facts of this case, and because Isaacs in his brief on appeal has failed to persuade us that even one of the Court's findings was clearly erroneous, we will only summarize those findings necessary to illustrate why personal jurisdiction in the Eastern District of Pennsylvania, under any of the three separate routes identified, is so plainly lacking here.

Mary Hitchcock Memorial Hospital is a teaching hospital located in New Hampshire, organized under the laws of that state and with its principal place of business in that state. It does not serve patients or maintain any programs in Pennsylvania, and does not pay taxes in Pennsylvania. Mark Bertrand does not teach or practice medicine in Pennsylvania or conduct any business there. Edward Kaplan is not licensed to practice law in Pennsylvania, does not pay taxes there, and does not target clients from Pennsylvania. Dartmouth College is an institution of higher learning located in New Hampshire, with its principal place of business there. Dartmouth College does not maintain an office or facility in Pennsylvania, has no officers or employees there, maintains no registered agent for service of process there, and does not own any real property there. Dr. Kim does not now reside in nor has he ever resided in Pennsylvania, he does not own real property or lease property there, and he has never been employed by an institution or organization there. The New Hampshire Board of Medicine, located in Concord, New Hampshire, is authorized to take action only regarding the practice of medicine in New Hampshire. Amy Waer is a resident of Tucson, Arizona and has no business, professional or personal association with Pennsylvania.

These seven defendants' contacts with Pennsylvania do not even approach the level of contact needed to attain general or specific personal jurisdiction, or personal jurisdiction under the effects test, in the Eastern District of Pennsylvania. The allegations in the amended complaint have nothing to do with Pennsylvania, the alleged harms did not occur in Pennsylvania, and these defendants do not purposely avail themselves of the privileges of conducting activities within Pennsylvania to the degree necessary to confer jurisdiction. Personal jurisdiction is not established by the mailing of a few letters to Isaacs after he returned to his home in Pennsylvania, or by the fact that he completed his ERAS and license applications in Pennsylvania. See Goodyear Dunlop Tires Op., 131 S. Ct. at 2851; Marten, 499 F.3d at 299. In addition, Isaacs' vague assertion that he has experienced an injury in Pennsylvania due to his termination from his New Hampshire residency and alleged constructive discharge from his University of Arizona residency will not suffice to establish jurisdiction under the effects test, for the reasons given by the District Court.

Specifically with respect to Dartmouth College, where the assertion of personal jurisdiction is at least not frivolous, the District Court found that it recruits athletes and faculty in Pennsylvania, and targets highly-qualified Pennsylvania high school students through emails and its website and admits them, among other similar things. Nevertheless, as the District Court correctly determined, these *de minimis* contacts, which any national university may have, do not relate to the allegations in Isaacs' amended complaint and are insufficient to establish personal jurisdiction in the Eastern District of Pennsylvania. Cf. Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 541-43 (3d Cir. 1985) (fact that some of school's students are Pennsylvania residents does not

9

signify a relevant business contact).  See also Gallant v. Trustees of Columbia University, 111 F. Supp.2d 638, 641-42 (E.D. Pa. 2000) ("While the plaintiff here has presented more contacts than those considered … in Gehling, none of these additional contacts demonstrate that Columbia has purposefully directed its activities to, or availed itself of, Pennsylvania[; rather,] they are the result of Columbia's general participation in the type of interstate activity in which any nationally prominent educational institution would engage.").  The District Court properly held that Duchesneau v. Cornell University, 2009 WL 3152125 (E.D. Pa. Sept. 30, 2009), which in any event we are not bound by, could be distinguished on its facts because, unlike Dartmouth College, Cornell University registered with the Pennsylvania Secretary of State and obtained a license to do business in Pennsylvania, operated a long-standing Mid-Atlantic Regional Office in Pennsylvania, and paid state and local taxes for its Pennsylvania employees.  Id. at *4.  Moreover, to the extent that Isaacs was harmed, Pennsylvania is not the focal point of the harm, nor did Dartmouth College expressly aim tortious conduct at Pennsylvania.

As to the Arizona Board of Regents and University of Arizona Health Sciences Center, the District Court properly held that these defendants are entitled to immunity from suit pursuant to the Eleventh Amendment, which immunizes States and their agencies from suits for damages in federal court, see Pennhurst State School v. Halderman, 465 U.S. 89, 100-02 (1984).  The Eleventh Amendment extends to the Arizona Board of Regents and the University, see Rutledge v. Ariz. Bd. of Regents, 660 F.2d 1345, 1349 (9th Cir. 1981), abrogated on other grounds by Haygood v. Younger, 769 F.2d 1350, 1356 (9th Cir. 1985) (en banc).

For the foregoing reasons, we will affirm the order of the District Court dismissing the amended complaint as to all defendants.