FILED
United States Court of Appeals
Tenth Circuit

**August 5, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

STEVEN J. KELLY,

     Defendant-Appellant.

No. 06-4011

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 1:05-CR-024-PGC)**

---

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, with him on the brief), Salt Lake City, Utah, for Defendant-Appellant.

Elizabethanne C. Stevens, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **LUCERO**, **McKAY**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

A jury in the District of Utah convicted Steven J. Kelly of two drug-trafficking offenses involving methamphetamine, and the district court sentenced him to 210 months of imprisonment and 48 months of supervised release. Mr. Kelly now appeals the conviction, raising venue challenges concerning the sufficiency of the evidence and the jury instructions. He also asserts that the district court committed reversible error by failing to comply with the Court Reporter's Act, 28 U.S.C. § 753(b), which requires a verbatim recording of all open-court proceedings in criminal cases.

Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We hold the government established venue in the District of Utah by a preponderance of the evidence and the district court did not plainly err in charging the jury on venue. Furthermore, we conclude that the district court did not commit reversible error under the Court Reporter's Act because Mr. Kelly has failed to establish the requisite prejudice. Accordingly, we **AFFIRM** the conviction.

## I. BACKGROUND

The Weber Morgan Narcotics Strike Force set up a controlled methamphetamine buy targeting Mr. Kelly after a confidential source identified him as a drug dealer. The agents arranged to purchase methamphetamine from Mr. Kelly at a local fast-food restaurant. At the meeting, an undercover agent met with Mr. Kelly and the informant. When the agent asked about

- 2 -

consummating the drug deal, Mr. Kelly and the informant indicated the methamphetamine was under the napkin located in the middle of the table. The agent then put the drugs in his pocket and attempted to pay Mr. Kelly, but Mr. Kelly refused to accept the money. Instead, the informant took the money and placed it on the table. When the agent asked how to arrange future purchases, Mr. Kelly instructed him to go through the informant. The amount of methamphetamine involved in this transaction was subsequently determined by law enforcement to be 8.5 grams.

A few months later, while investigating a drug complaint, the same agents witnessed an individual, who was subsequently identified as Mr. Kelly, driving by on a motorcycle. The agents observed the motorcycle driver slow down as he passed a home where they were investigating a narcotics complaint. He made a U-turn and drove by a second time. The agents recalled hearing about a suspected drug dealer who delivered drugs on a motorcycle to this house. Thus, the agents attempted to pull the motorcycle driver over to talk to him, but the driver kept going. When the agents caught up with the driver, they observed him coasting on the shoulder of the road with his lights off and pulled him over for driving with no headlights. When the agents identified themselves, the driver attempted to get away, but his motorcycle stalled. At that point, the agent involved in the controlled drug purchase recognized the driver as Mr. Kelly and arrested him for the drug deal at the restaurant. The agents did not find drugs on Mr. Kelly or the

motorcycle at the time, but when they returned to the area of arrest later that night they found a bag containing 45.8 grams of methamphetamine on the sidewalk. Mr. Kelly later admitted the drug package was his and also admitted he dealt drugs.

Mr. Kelly was charged in a two-count indictment with possession with intent to distribute five or more grams of methamphetamine (Count I) and distribution of five or more grams of methamphetamine (Count II), both in violation of 21 U.S.C. § 841(a)(1). Count I was based on the second incident involving the 45.8 grams. Count II was based on the earlier undercover drug deal involving the 8.5 grams.

Mr. Kelly pleaded not guilty and the case proceeded to trial. At the conclusion of the trial, defense counsel made a general motion for acquittal, which the district court denied. The district court imposed a sentence of 210 months of imprisonment and a 48-month term of supervised release. Mr. Kelly then brought this timely appeal.

## II. DISCUSSION

### A. *Sufficiency of the Evidence on Venue*

Mr. Kelly challenges his conviction, alleging that there was insufficient evidence for a reasonable jury to find that the two charged crimes occurred in the District of Utah. Mr. Kelly contends that the government presented "[n]o evidence to support a finding of the location" and therefore his conviction must

be reversed for insufficient evidence. *See* Aplt. Br. at 4. We cannot agree.

Venue is a question of fact ordinarily decided by a jury. *United States v. Miller*, 111 F.3d 747, 749 (10th Cir. 1997). Whether the government presented sufficient evidence to support a jury's finding on venue is a question of law. *Id.;* 2 Charles Alan Wright, *Federal Practice & Procedure* § 307, at 349 (3d ed. 2000) ("Whether there was sufficient evidence to justify a finding on venue is a question of law for the court."). In reviewing whether venue lies in a particular district, the standard of review is whether "viewing the evidence in the light most favorable to the Government and making all reasonable inferences and credibility choices in favor of the finder of fact, the Government proved by preponderance of direct or circumstantial evidence that the crimes charged occurred within the district." *United States v. Rinke*, 778 F.2d 581, 584 (10th Cir. 1985). Our review is "quite deferential." *United States v. Evans*, 318 F.3d 1011, 1021 (10th Cir. 2003).

Although venue is not the focal point in most criminal matters, it is "not a mere technicality." *Miller*, 111 F.3d at 749; *see also United States v. Winship*, 724 F.2d 1116, 1123 (5th Cir. 1984) ("Appellants raise more than a pedantic, justice-defeating technicality in asserting venue related rights." (internal quotation marks and footnote omitted)). It is a constitutional consideration and an element of every crime. *Miller*, 111 F.3d at 749. Specifically, the U.S. Constitution, in Article III, Section 2, Clause 3, "requires that the trial of any

crime be held in the state in which the crime was committed," and the Sixth Amendment "guarantees trial by a jury of the state and district in which the crime was committed." *Id.* (internal quotation marks omitted) (quoting *United States v. Medina-Ramos*, 834 F.2d 874, 875-76 (10th Cir. 1987)). The Federal Rules of Criminal Procedure also address venue, providing for prosecution in the district where the offense occurred, unless a statute or other permissive procedure allows for another venue. *See* Fed. R. Crim. P. 18.

Even so, we have consistently approached venue differently than other "substantive" elements making up a criminal offense. *Miller*, 111 F.3d at 749. The critical distinction is the government need only establish venue by a preponderance of the evidence and not beyond a reasonable doubt. *See United States v. Byrne*, 171 F.3d 1231, 1234 (10th Cir. 1999). Thus, in our review, we are mindful that venue is an element of every crime, while recognizing the separate evidentiary standards.

1.  *Preservation of Challenge to Venue*

Before turning to the merits, the threshold question is whether Mr. Kelly's venue challenge is a proper subject of review. The government contends that Mr. Kelly waived his right to question venue and urges us to decline to review his challenge. On the other hand, Mr. Kelly vigorously contends that the record does not establish a waiver. We agree with Mr. Kelly.

A waiver of a constitutional right ordinarily must involve an intentional

relinquishment or abandonment of a known right. *See United States v. Olano*, 507 U.S. 725, 733 (1993). However, we have "applied a more relaxed standard for finding a waiver of venue rights than for finding waiver of other constitutional rights in criminal trials." *Miller*, 111 F.3d at 750. Indeed, a defendant may "waive venue rights by his inaction." *Id.*; 2 Wright, *supra*, § 306, at 343 ("The courts [] have also found a waiver of venue from the inaction of defendant. The absence of an objection to venue, or a motion specifically raising the defect, has been held to constitute a waiver."). "[A] party that has *waived* a right is not entitled to appellate relief." *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir.), *cert. denied*, 127 S. Ct. 247 (2006); *see also United States v. Carrasco-Salazar*, 494 F.3d 1270, 1273 (10th Cir. 2007) (holding, where challenge was waived, that appellate review is "precluded").[1]

A defendant can waive improper venue when it is apparent on the face of the indictment that the case should have been tried in another jurisdiction, and yet the defendant allows the trial to proceed without objection. *United States v.*

---

[1] Where the conditions for waiver are *not* met, appellate courts may nevertheless conclude that a party failed to preserve a claim of error by not timely asserting a legal right. In that event, the courts deem the alleged right to be forfeited. *See Olano*, 507 U.S. at 733-34 ("If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection."). "[A] party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error . . . ." *Teague*, 443 F.3d at 1314. We need not, however, detail the application of plain error standards here, because we not only conclude that Mr. Kelly did not waive his venue challenge, but also (as discussed *infra*) that he properly preserved it for appeal.

*Jackson*, 482 F.2d 1167, 1179 (10th Cir. 1973); 2 Wright, *supra*, § 306, at 343-44.
Here, the indictment alleged that Mr. Kelly committed the crimes in the District
of Utah, the place where he was to be tried. Therefore, Mr. Kelly would not have
been on notice by reviewing the indictment of the need to challenge venue. *See*
*Jenkins v. United States*, 392 F.2d 303, 305-06 (10th Cir. 1968) (noting, regarding
a case tried in the District of Kansas, that the indictment "on its face . . . is
complete as to venue and each count asserts the offense was committed in
Kansas" and that it "cannot thus be said that the defendant waived the objection
he now asserts by going to trial under these circumstances"). Indeed, we discern
nothing in the record indicating that Mr. Kelly would have possessed the
necessary information to make an informed decision on whether to attack the
sufficiency of the venue proof until the government rested its case at trial. *See*
*id.*; *see also* 2 Wright, *supra*, § 306, at 345 ("If there is a proper allegation of
venue, but the proof fails to support the allegation, the objection can be raised at
the close of all of the evidence.").

Accordingly, we cannot conclude here that Mr. Kelly waived venue. If we
were to do so, we would be essentially penalizing Mr. Kelly for failing to
accurately predict before the trial began the venue-related evidence the
government would offer at trial. *See Jenkins*, 392 F.2d at 306-07 (where
indictment was "on its face . . . complete as to venue," rejecting as having "little
appeal" the government's contention that because the defendant was being retried

on the same indictment he should have objected to venue "before the trial commenced," stating that "the defendant was entitled to have the trial proceed as there was no way of knowing that the proof at the second trial would be the same as at the first").

The more difficult question is whether Mr. Kelly preserved his challenge to venue through his non-specific motion for acquittal, which did not explicitly identify a concern with venue. We have not addressed this precise issue. However, our venue precedent and the weight of authority in other circuits convince us that Mr. Kelly preserved his right to challenge the sufficiency of the evidence with respect to venue.

"When a defendant challenges in district court the sufficiency of the evidence on specific grounds, 'all grounds not specified in the motion are waived.'" *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (quoting *United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003)). This would include an objection on venue grounds. *See United States v. Price*, 447 F.2d 23, 27 (2d Cir. 1971) (finding if defendant "specifies grounds for acquittal but is silent as to venue" at conclusion of government's case, defendant waives venue).

On the other hand, if a defendant files a general motion for acquittal that does not identify a specific point of attack, the defendant is deemed to be challenging the sufficiency of each essential element of the government's case, including venue. *See United States v. Gross,* 276 F.2d 816, 818-19 (2d Cir. 1960)

(noting a motion for acquittal made at conclusion of evidence properly challenges the proof on venue); *United States v. Browne*, 225 F.2d 751, 755 (7th Cir. 1955) (holding with respect to a general motion for directed verdict that it raised the question as to the sufficiency of the evidence on venue, "an essential part of the Government's case" (internal quotation marks and citation omitted)); 2 Wright, *supra*, § 306, at 345-46 ("A general motion for acquittal after all the evidence is in is sufficient to challenge the failure to prove venue, . . . .").[2]

Here, Mr. Kelly raised a general motion for acquittal. It came after the government rested its case. Defense counsel stated: "At this point, Your Honor, we'll just make the standard motion to dismiss for failure to establish a prima facie case as a pro forma motion." R., Vol. V, Doc. 66, at 33 (Tr. of Jury Trial,

---

[2]     We recognize that some circuit authority could be construed as pointing in a different direction. *See, e.g.*, *United States v. Matera*, 489 F.3d 115, 124 (2d Cir. 2007) (noting the principle that "a defendant's objections to venue are waived unless specifically articulated" (citing *United States v. Bala*, 236 F.3d 87 (2d Cir. 2000))), *cert. denied*, 128 S. Ct. 424 (2007); *United States v. Carbajal*, 290 F.3d 277, 289 n.19 (5th Cir. 2002) (concluding that the defendant "failed to preserve" his challenge to venue when he did not "specifically rais[e] the issue in his motion for acquittal or by requesting a jury instruction on venue" (emphasis added)). We need not undertake, however, a detailed analysis to determine whether these cases actually conflict with the view of preservation of venue challenges adopted here. Assuming that these cases properly may be read to require defendants to specifically identify venue as a basis for a motion for acquittal to preserve a sufficiency-of-the-evidence challenge to venue, we deem them to be unpersuasive because they offer no explanation for why venue should be treated differently than any other offense element, the challenge to which would be preserved by a general motion for acquittal. And we are not aware from our research of a cogent reason to apply such a differential treatment to the venue element of an offense on the issue of preservation.

dated Sept. 27, 2005). The district court responded: "All right. That motion will be denied. The government has established the elements of the offense here, at least evidence from which a jury could conclude that they have been established. It's up to the jury to figure out whether that's the case or not." *Id.*

By raising such a general motion, Mr. Kelly put at issue all of the essential elements of the charged offenses, including venue. Accordingly, we conclude that Mr. Kelly adequately preserved his venue challenge for appellate review and turn to the merits.

**2.      *Consideration of Venue Challenge on the Merits***

Mr. Kelly argues the law requires the government to present evidence that the offense charged occurred within Utah, "or at least gives rise to a reasonable inference of a location within the district [of Utah] sufficient that a finding may be made by a preponderance of the evidence." Aplt. Br. at 7. We agree, but conclude that the government met this burden.

There does not appear to be any direct evidence on the venue question, but there need not be. 2 Wright, *supra*, § 307, at 347 ("It is clear . . . that there is no requirement of direct proof of venue."). The government may prove "by preponderance of direct *or* circumstantial evidence that the crimes charged occurred within the district." *Rinke*, 778 F.2d at 584 (emphasis added); 2 Wright, *supra*, § 307, at 347 (noting that "[l]ike any other fact, venue may be proved by circumstantial evidence"). Furthermore, "[w]hether an offense occurred within

- 11 -

particular geographical boundaries is an appropriate subject for judicial notice."
*United States v. Burch*, 169 F.3d 666, 671 (10th Cir. 1999); *see Byrne*, 171 F.3d
at 1233 n.1 (taking judicial notice that the "city of Clovis is located within Curry
County, New Mexico," and stating that defendant's venue objection, which was
"[p]resumably" based on the fact that the indictment referred to Curry County,
New Mexico rather than the city of Clovis, "borders on the frivolous"); 2 Wright,
*supra*, § 307, at 347-48 (noting that "[j]udicial notice may be resorted to" in
considering the sufficiency of evidence regarding venue).

The record contains a significant number of geographical references from
which a reasonable jury could have inferred that the charged crimes occurred in
the District of Utah.

Particularly telling is the testimony of the two law enforcement agents
principally involved in the investigation of Mr. Kelly's criminal conduct. With
respect to events associated with Count II, the first agent to testify referred to
"Weber County" as the area of operation of a criminal suspect that he had heard
delivered narcotics on a motorcycle to the house under surveillance. R., Vol. IV,
Doc. 65, at 43-44 (Tr. of Jury Trial, dated Sept. 26, 2005). This information
played a very significant role in the agent's decision to effectuate a traffic stop of
Mr. Kelly, because they were trying to determine whether the then-unidentified
motorcyclist (Mr. Kelly) was that criminal suspect. Furthermore, this agent
testified that when Mr. Kelly was arrested after the traffic stop he had in his

possession two Utah identification cards in the names of two other individuals and a Utah driver's license in the name of a third person. According to the agent, Mr. Kelly told him that he had found the licenses in "North Ogden" about one hour before his arrest. *Id.* at 29. Relevant to the same count, the second agent mentioned in his testimony specific streets traveled by Mr. Kelly on his motorcycle, including "Sunview" and "Mountain." Regarding the drug transaction at issue in Count I, involving Mr. Kelly, the undercover agent, and the informant, the second officer referred to "Ogden City" in a manner indicating that it was the location of the transaction. *Id.* at 53. Specifically, the agent explained why he observed the transaction from afar: "Everybody in Ogden City knows me so I tried to stay as far away as possible." *Id.*

Furthermore, two non-law enforcement witnesses who testified for the government provided additional geographical references from which a reasonable jury could have inferred that Mr. Kelly's crimes occurred in the District of Utah. With respect to the drug transaction at issue in Count I, the informant testified that she introduced the undercover officer to Mr. Kelly as her "friend from Centerville." R., Vol. V, Doc. 66, at 14. The other witness testified that Mr. Kelly spoke about his possession of the methamphetamine at issue in Count II as they were being released from the "Weber County Jail," two days after the agents arrested Mr. Kelly and found the methamphetamine. *Id.* at 25.

We take judicial notice of the fact that there is a Weber County in the

- 13 -

District of Utah; that there are cities named Ogden City, North Ogden, and

Centerville in that district; that there are streets named "Sunview" and

"Mountain" in Ogden City, Utah; and that Ogden City, Utah is located in, and the

county seat of, Weber County.[3]  From these geographical references and the

related testimony, a reasonable jury could have readily inferred that Mr. Kelly's

criminal conduct occurred in the District of Utah.

The then-Fifth Circuit employed a similar rationale in concluding that there

was sufficient evidence to support a finding of venue in the Middle District of

Alabama:

> Although there was no direct testimony that the offense
> occurred in Montgomery, Alabama, the record in this case is
> replete with references to the city of Montgomery, including
> those to St. Margaret's Hospital, to various local streets and
> businesses, to the Montgomery Police Department and the
> Montgomery Public Library, to a local daily newspaper and to
> a junior high school. Under the circumstances, the mere fact
> that other towns or cities elsewhere in the United States might
> share the name Montgomery cannot defeat the natural
> inference that the Montgomery referred to at trial is in fact the
> Montgomery located in the Middle District of Alabama.

---

[3]    There can be no dispute regarding these facts and confirmation of them can be easily found through simple Internet searches.  *See* Welcome to Ogden City, http://www.ogdencity.com (official website of Ogden City, Utah) (last visited June 25, 2008); Mapquest, http://www.mapquest.com/maps (search for address of "Sunview" or "Mountain" in Ogden, Utah in "Maps" dialogue box) (last visited June 25, 2008); North Ogden City, http://www.northogdencity.com (official website of North Ogden City, Utah) (last visited June 26, 2008); Centerville City, http://www.centervilleut.net/indix.php (official website of Centerville City, Utah) (last visited June 26, 2008).

*United States v. Turner*, 586 F.2d 395, 397 (5th Cir. 1978) (summary calendar).
Like evidence pertaining to Montgomery, Alabama in *Turner*, the Utah-related
evidence here provided significant proof that venue was appropriately lodged as
to the two charged crimes in the District of Utah.

The jury, however, was not limited to that evidence. The government
offered testimony and other evidence indicating that the investigation of Mr.
Kelly's criminal conduct was carried out by Utah state officials. The two
principal investigators testified that they were affiliated with a Utah state
narcotics task force that focused in part on crimes in Weber County.
Furthermore, the government offered evidence that the Utah Crime Laboratory
analyzed the controlled substances that formed the basis of the charges against
Mr. Kelly.[4]

---

[4] Mr. Kelly cites our decision in *Evans*, *supra*, arguing that we are not
at liberty to presume the Utah-based agents operated within their jurisdiction, or
by extension, that the Utah Crime Laboratory's involvement demonstrates the
crime occurred in Utah. In *Evans*, in concluding that the evidence was
insufficient to support a venue finding, we rejected the district court's application
of "a presumption that law enforcement officers of a particular jurisdiction act
within that jurisdiction." 318 F.3d at 1022. We did not rule in *Evans*, however,
that the geographical jurisdictional affiliation of law enforcement officers is an
irrelevant fact in the venue inquiry or that it could not be considered along with
other evidence (direct or circumstantial) in determining whether there was
sufficient proof of venue. Accordingly, we are not precluded here from factoring
into the venue calculus the fact that the law enforcement agents and scientists
involved in the criminal investigation giving rise to the charges against Mr. Kelly
were affiliated with the state of Utah—where the crime is alleged to have
occurred. Moreover, unlike *Evans*, there was ample proof beyond the

(continued...)

Lastly, the argument here that the jury could find sufficient proof on this record of venue by a preponderance of the evidence is particularly cogent because, unlike some of our prior cases,[5] there was no evidence before the jury that Mr. Kelly committed any of the charged criminal conduct in any place other than where he was tried, the District of Utah. Accordingly, there were no competing venue possibilities. *See Miller*, 111 F.3d at 751 (noting that a jury's guilty verdict signals a proper finding of venue "[w]here the entirety of the defendant's illegal activity is alleged to have taken place within the trial jurisdiction, and no trial evidence is proffered that the illegal act was committed in some other place or that the place alleged is not within the jurisdiction"). *Cf. Jenkins*, 392 F.2d at 306 (concluding that, where the theft at issue occurred in Kansas—where defendant was tried—"[t]here is not a sufficient relationship between the fact of possession [of items from the theft] in Oklahoma and . . . receiving and possessing in Kansas" to support a finding of venue in Kansas). *Accord United States v. Greene*, 995 F.2d 793, 801 (8th Cir. 1993) (agreeing with defendant charged with manufacturing marijuana that where the only evidence of

---

[4](...continued) jurisdictional affiliation of the law enforcement agents to provide a proper legal foundation for a venue finding.

[5] *See Byrne*, 171 F.3d 1231 (where offense involved conduct in Texas and New Mexico); *Rinke*, 778 F.2d 581 (where offense involved conduct in Florida and Kansas); *Jenkins*, 392 F.2d 303 (where offense involved conduct in Kansas and Oklahoma).

venue in the Southern District of Iowa was holes in a map purporting to show marijuana fields and the holes were "distributed both inside and outside" that district, "only by speculating could a reasonable jury have found that any of the marijuana fields was in the district of indictment").

In sum, we conclude that there was ample evidence from which a reasonable jury could have found that venue was proper in the District of Utah.[6]

## B.  Jury Instructions on Venue

Mr. Kelly next asserts that the district court plainly erred by not including a jury instruction on venue.  More specifically, Mr. Kelly argues that "even if this court finds that the evidence is marginally sufficient as a matter of law, it is clear

_____

[6]     Regarding the sufficiency of the evidence, the government has directed our attention to a statement of Mr. Kelly's counsel in closing argument, in which he identified "Ogden" as the "general area" where Mr. Kelly was located when he was arrested.  R., Vol. V, Doc. 66, at 48.  Based on this statement, the government contends that Mr. Kelly "effectively conceded that venue was proper in Utah."  Aplee. Br. at 13.  We decline, however, to give any significance to this closing-argument statement of Mr. Kelly's counsel in our sufficiency-of-the-evidence analysis.  The district court gave the jury a common instruction that directed it not to consider the lawyers' arguments as evidence.  *See* Supp. R., Vol. I, Doc. 74, at 8 (Order Docketing Jury Instructions, dated Aug. 31, 2006) (Instruction No. 6) ("Statements and arguments of counsel are not evidence in this case."); *see, e.g*, *United States v. Espinosa*, 771 F.2d 1382, 1401 (10th Cir. 1985) (where the district court instructed the jury that "the statements and arguments of counsel were not evidence and were not to be considered in rendering a verdict."). We presume that the jury followed that instruction.  *See, e.g.*, *United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002) ("We presume jurors attend closely to the language of the instructions in a criminal case and follow the instructions given them.").

that venue is a highly questionable issue for the trier of fact" and, consequently, the court was obliged to give the jury an instruction on this issue. Aplt. Br. at 12-13. Mr. Kelly's argument stems from the view that "[i]n considering whether a failure to instruct on the issue of venue constitutes plain error, courts have considered whether the issue was sufficiently questionable from the evidence such that it is fair to have required that the jury consider the issue." *Id.* at 11.

However, as Mr. Kelly acknowledges, because he did not request a venue instruction, we review his contention under a plain error standard. *See Byrne*, 171 F.3d at 1235. Under this standard, a defendant "must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if [4] it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Goode*, 483 F.3d at 681 (internal quotation marks omitted) (quoting *Kimler*, 335 F.3d at 1141).

Initially, under the circumstances of this case, we are hard-pressed to conclude that the district court erred.[7] Contrary to Mr. Kelly's assertions, the

---

[7] Where "the district court fail[s] to give the jury a specific instruction on venue," despite the defendant's *request* for one and timely objection at the denial of it, we have established a rigorous standard that the government must satisfy to avoid reversal of the conviction. *Miller*, 111 F.3d at 750-53; *see also United States v. Casch*, 448 F.3d 1115, 1118 (9th Cir. 2006) (describing the Tenth Circuit's harmless standard as "more vigorous" than its own). In *Miller*, we "adopt[ed] the rule that failure to instruct on venue, *when*

(continued...)

- 18 -

district court did instruct the jury on the venue issue. Although it did not include a separate jury instruction on venue, the instructions for each count clearly outlined venue as an element that the jury needed to find in order to convict Mr. Kelly. Indeed, the instructions required the jury to find that venue was proper in the District of Utah under a higher evidentiary standard than the law requires—*viz.*, a beyond a reasonable doubt standard, as opposed to a preponderance of the evidence standard.

Specifically, the jury instructions for Count I provided that a guilty verdict required the government to prove "beyond reasonable doubt" that "[t]he Defendant, Steven J. Kelly, knowingly and intentionally possessed [five or more grams of actual methamphetamine] *in the District of Utah* . . . ." Supp. R., Vol. I, Doc. 74, at 18 (Instruction No.16) (emphasis added). For Count II, the jury instruction stated that the government must prove beyond a reasonable doubt that "[t]he Defendant, Steven J. Kelly, knowingly and intentionally distributed the controlled substance [five or more grams of actual methamphetamine] *in the District of Utah . . . ." Id.* at 19 (Instruction No. 17) (emphasis added). Indeed,

---

[7](...continued)
*requested*, is reversible error unless it is beyond a reasonable doubt that the jury's guilty verdict on the charged offense necessarily incorporates a finding of proper venue." 111 F.3d at 751 (emphasis added). The *Miller* standard does not apply here, however, because Mr. Kelly did not request a specific venue instruction. *See Byrne*, 171 F.3d at 1235 (concluding that "*Miller* is inapposite" because the defendant "did not object to the lack of a specific venue instruction at trial").

the trial judge instructed the prosecution to include the venue requirement in the instructions stating, "I think we need to add 'in Utah' to cover the venue issue." R., Vol. III, Doc. 67, at 8 (Tr. of Pre-trial Hr'g, dated Sept. 19, 2005).

Thus, the district court's instructions specifically informed the jury that it was required to make a finding regarding venue—and, more specifically, a finding that the charged offenses occurred in the District of Utah—to convict Mr. Kelly. We are therefore at a loss to see how the district court erred. *Cf. Miller*, 111 F.3d at 750 (rejecting argument that purported "general instruction on venue" could render harmless district court's failure to give *requested* specific venue instruction, where "the instruction did not inform the jury that it was required to make findings on the issue of venue," and more specifically, findings concerning the propriety of venue where the case was tried).

Even if the district court's venue instructions could be shown to be legally inadequate, Mr. Kelly still could not prevail under the plain error standard. Specifically, he could not satisfy the third and fourth factors. Assuming *arguendo* that Mr. Kelly is correct that we should be inclined to find the plain error standard satisfied when the venue evidence is "questionable," we have clearly demonstrated in Section II.A.2, *supra*, that it is not here. Instead, the evidence provided ample foundation for the jury to find that venue was proper in the District of Utah.

More fundamentally, in a case like this where the evidence clearly established the propriety of venue in the District of Utah, and there were no competing venue possibilities, even if the district court's instructions were legally defective on the venue issue, we would conclude that "the jury's guilty verdict necessarily incorporated a finding of proper venue." *Byrne*, 171 F.3d at 1235.[8] *Cf. Miller*, 111 F.3d at 751 ("Where the entirety of the defendant's illegal activity is alleged to have taken place within the trial jurisdiction, and no trial evidence is proffered that the illegal act was committed in some other place or that the place alleged is not within the jurisdiction, any defect in failing to specifically instruct on venue would be cured by the guilty verdict."); *id.* at 753 ("[A] failure to instruct does not lead to reversible error where the jury by necessity renders a verdict on the substance of the element."). Specifically, from the state of the evidence, it would follow ineluctably that Mr. Kelly's substantial rights would not have been affected by any instructional defect (the third plain error factor) and

---

[8] As support for our conclusion that the plain error standard was not satisfied in *Byrne*, we noted that the defendant "did not genuinely challenge the location" of the acts that "established venue" and "comprised the sole basis for defendant's guilt." 171 F.3d at 1235. Similarly, Mr. Kelly does not direct us to any place in the record where he actually disputed the location of the events that established the basis for his guilt, and we have found no indication in the record that he did so. Indeed, Mr. Kelly's counsel in closing argument identified "Ogden" as the "general area" where Mr. Kelly was located when he was arrested. R., Vol. V, Doc. 66, at 48. Although we declined the government's invitation to take this closing-argument statement into consideration in assessing the sufficiency of the evidence of venue, *see supra* note 5, we do believe that it has some probative value on the question of whether Mr. Kelly ever genuinely disputed the alleged location of his criminal acts.

there would be no serious affect on the fairness, integrity, or public reputation of the proceedings (the fourth factor).

Therefore, for the reasons noted, Mr. Kelly's venue-related challenge to the instructions must fail.

### C. Compliance with the Court Reporter's Act

Mr. Kelly claims prejudicial error in this case because the district court instructed the court reporter not to transcribe the jury instructions as they were being read from the bench. Under the Court Reporter's Act, 28 U.S.C. § 753(b), all open court proceedings in criminal cases are required to be recorded verbatim. The Act places the responsibility to ensure that this takes place on the court, not the parties. *Edwards v. United States*, 374 F.2d 24, 26 n.2 (10th Cir. 1966) (as to the Court Reporter's Act, noting that "[i]t is the responsibility of the court to be certain that its provisions are strictly observed, and no request is necessary"). Although a court's failure to comply with the Act is error, it is only reversible error "when the unavailability of a transcript makes it impossible for the appellate court to determine whether or not prejudicial error was committed with regard to a challenged action." *United States v. Haber*, 251 F.3d 881, 889 (10th Cir. 2001) (internal quotation marks and citation omitted).[9]

---

[9] Mr. Kelly acknowledges that his counsel did not object to the district court's decision to forego the transcription of the jury charge. The government contends that because Mr. Kelly's counsel did not object, Mr. Kelly "waived his

(continued...)

Mr. Kelly is correct that the district court erred in not requiring the court reporter to transcribe its reading of the written jury instructions. Specifically, the court stated, "I'm not going to have my court reporter transcribe this because I'll be reading here." R., Vol. V, Doc. 66, at 36. However, we conclude that there is no reversible error here because Mr. Kelly has made no *specific* showing of prejudice. *Haber*, 251 F.3d at 890 (noting that "the defendant must show the transcript errors specifically prejudiced his ability to appeal"); *United States v. Taverna*, 348 F.3d 873, 880 (10th Cir. 2003) (discerning no reversible error under Court Reporter's Act where defendant did not "allege he suffered any specific prejudice").

In our review of this case, we have had full access to the district court's written instructions. In response to Mr. Kelly's written request, the district court ordered that a copy of the jury instructions be included in the record. In doing so,

---

[9](...continued)
objections to the court's procedure and may not now complain that the court's reading of the instructions was not transcribed." Aplee. Br. at 28. We note that some of our sister circuits have held that a defendant can waive compliance with the Court Reporter's Act "expressly or by acquiescing in the court's procedure." *United States v. Nolan*, 910 F.2d 1553, 1560 (7th Cir. 1990); *see also United States v. Piascik*, 559 F.2d 545, 550 (9th Cir. 1977). Under this rule, Mr. Kelly's silence probably amounted to acquiescence and, consequently, he would be held to have waived his challenge under the Court Reporter's Act. We have not previously addressed under what circumstances, if any, a defendant should be deemed to have waived an objection to a violation of the Court Reporter's Act, and we need not address the matter here. As discussed *infra*, Mr. Kelly cannot prevail on the merits in his challenge under the Court Reporter's Act.

the court stated "[h]aving been apprised that the jury instructions in this case were not docketed, the court has printed out a true and accurate copy of the jury instructions that were read to the jury in this case. The attached instructions are those instructions."[10]  Supp. R., Vol. I, Doc. 74, at 1.

---

[10]  Mr. Kelly contends that the district improperly supplemented the record with the written jury instructions without holding a hearing. Specifically, he argues that under Fed. R. App. P. 10(e)(2)(B) "such an action *should* not be taken without notice to the parties and an opportunity given to object or seek further clarification of the record." Aplt. Br. at 16 (emphasis added). In pertinent part, Rule 10(e)(2)(B) provides that: "If anything material to either party is omitted from . . . the record by error or accident, the omission . . . may be corrected and supplemental record may be certified and forwarded . . . by the district court before or after the record has been forwarded [to the court of appeals] . . . ." Fed. R. App. P. 10(e)(2)(B). We review the district court's decision to supplement the record here for an abuse of discretion. *See Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 216 (6th Cir. 1992) (noting that the "parties agree" that Rule 10(e) "commits this determination [to supplement the appellate record] to the discretion of the district court"). *Cf. United States v. Oliver*, 278 F.3d 1035, 1042 (10th Cir. 2001) (reviewing a district court's denial pursuant to Rule 10(e) of a defendant's motion "to supplement the record with a photograph of a tattoo on his arm" for an abuse of discretion). By its plain terms, Rule 10(e)(2)(B) does not establish a blanket, notice-and-hearing precondition upon the district court's authority to supplement the record. Furthermore, Mr. Kelly does not direct us to any case law that has interpreted the Rule as mandating such a precondition. Indeed, as suggested by his argument's use of the permissive term "should," Mr. Kelly seems to tacitly concede that Rule 10(e)(2)(B) does not require such a notice-and-hearing procedure.

It appears to be beyond dispute that the written instructions at issue were prepared by the district court for this case, that the district court read from them in charging the jury, and that the district court omitted the jury instructions from the record by mistake. When notified of the omission by Mr. Kelly, it strikes us as eminently reasonable for the district court to promptly cause the record to be supplemented with the instructions—which unquestionably reflect matters that transpired in the district court. Furthermore, Mr. Kelly's notification correspondence did not signal to the district court a need to conduct a hearing to

(continued...)

In light of the district court's representation, we have no reason to doubt that the written jury instructions available to us are in fact the instructions the court gave to the jury. Furthermore, the proceedings in the district court are entirely consistent with this view. Immediately after it instructed the court reporter not to record its reading of the instructions, the court stated: "If the lawyers notice any deviation [from the written instructions], I'm sure they will let me know." R., Vol. V, Doc. 66, at 36. Significantly, neither counsel brought to the court's attention any instances where, in counsel's view, the court altered or omitted language of the written instructions. Indeed, notwithstanding its technical error under the Court Reporter's Act, the court took great care to ensure that any events that transpired during its reading of the instructions would be available for appellate review. When the court perceived that it was providing the jury with additional information that went beyond the text of the instructions—such as practical how-to information regarding the use of the

---

[10](...continued)
entertain objections prior to ordering the record supplemented. Indeed, Mr. Kelly does not assert on appeal that he made such a hearing request. Moreover, as discussed further *infra*, to the extent that Mr. Kelly believed that the instructions did not fully capture matters that the district court communicated to the jury during its charge he could have availed himself of another section of Rule 10—that is, 10(c)—that allows a litigant to "prepare a statement of . . . proceedings from the best available means," for approval by the district court and inclusion in the record. Fed. R. App. P. 10(c). Mr. Kelly, however, failed to do this. Accordingly, under the foregoing circumstances, we have little difficulty concluding that the district court did not abuse its discretion in supplementing the record with the written jury instructions without holding a hearing.

verdict forms—it directed the court reporter to put its remarks on the record. *See* R., Vol. V, Doc. 66, at 37-39. Therefore, we may confidently conclude that the district court's violation of the Court Reporter's Act has not left us with a record that "makes it impossible . . . to determine whether or not prejudicial error was committed." *Edwards*, 374 F.2d at 26.

To be sure, Mr. Kelly maintains that he "does not agree" that the jury instructions that the district court caused to be added to the record are "an accurate reflection of the trial proceedings." Aplt. Br. at 14 n.2. Relatedly, Mr. Kelly's appellate counsel complains that because he was not Mr. Kelly's trial counsel, he "cannot evaluate whether the document printed out by the district court . . . is the same as the instructions which were read to the jury, or whether there were additional elaborations or comments on the written instructions made by the court to the jury" that were not transcribed. *Id.* at 17. Regarding the latter point, Mr. Kelly's appellate counsel reports Mr. Kelly's "belief" that the district court "made other comments beyond the written instructions which were not recorded." *Id.*

However, Mr. Kelly's expression of amorphous concerns regarding possible gaps in the appellate record does not amount to an "allega[tion] [that] he suffered any *specific prejudice* as a result of the omissions." *Taverna*, 348 F.3d at 880 (emphasis added). For example, Mr. Kelly offers not even a clue regarding the

nature of any errors that might be disclosed in the purported gaps in the record. *See United States v. Renton*, 700 F.2d 154, 159 (5th Cir. 1983) (rejecting defendant's challenge based upon omissions in the record, noting that before the court were "only vague allegations of prejudice," and attributing "significance" to "counsel's inability to indicate one specific error committed during the portions of trial not included in the record" (internal quotation marks omitted)). Factually-supportable allegations of specific prejudice, however, are required by our precedent. *See Haber*, 251 F.3d at 890.

Furthermore, even if Mr. Kelly were able to articulate an adequate claim of prejudice from the purported omissions in the record, that claim would be significantly undermined (if not defeated) by Mr. Kelly's failure to avail himself of established procedures—specifically, the procedures of Fed. R. App. P. 10(c)—for reconstructing the gaps in the record. *See Taverna*, 348 F.3d at 880 (in rejecting defendant's claim of reversible error under the Court Reporter's Act, finding it significant that defendant "never moved to correct or modify the record" under Rule 10(c)). *Cf. United States v. Bornfield*, 184 F.3d 1144, 1146 (10th Cir. 1999) (order denying petition to recall mandate) (noting that "the proper composition of the record" was the defendant-appellant's "obligation" and that "even if the initial objection conferences were not recorded" that Rule 10(c) "provides for the submission of a statement of the evidence in situations w[h]ere the proceedings were not recorded"). *Compare Nolan*, 910 F.2d at 1560 ("Nolan

has made no attempt on appeal to reconstruct the sidebar discussion through the procedure provided by Fed. R. App. P. 10(c), or any other method. He has thus failed to show the reasonable but unsuccessful effort to determine the substance of the off-the-record remarks necessary to have this court reverse the court's judgment." (internal quotation marks omitted)), *and Herndon v. City of Massillon*, 638 F.2d 963, 965 (6th Cir. 1981) (per curiam) (noting that the "clear lesson" of cases within and outside its circuit is that "a party may not seek a new trial simply because matters occurring in the district court are not reflected in the transcript" but instead "that party must at least attempt to cure the defect by reconstructing the record" under Rule 10(c)), *with Renton*, 700 F.2d at 158-59 (noting that objections to an allegedly "faulty trial transcript" are not "forfeit[ed]" by failure to invoke Rule 10(c) to rectify the alleged problems, but failure to raise concerns about transcript gaps, apparently through means including Rule 10(c), is a "significant" factor weighing against reversal).[11]

For the foregoing reasons, we conclude that Mr. Kelly cannot establish the requisite prejudice stemming from the district court's error under the Court Reporter's Act and, consequently, his challenge fails.

---

[11]     One noted treatise also has addressed this issue.  *See* 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3956.3, at 341-42 (3d ed. 1999) (noting that "failure to attempt reconstruction of a missing transcript may lead to affirmance for failure to provide a basis for reasoned review").

## III.  <u>CONCLUSION</u>

Mr. Kelly's conviction is **AFFIRMED**.