Christopher JIANNINEY, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 350, 2007.

Supreme Court of Delaware.

Submitted: Sept. 10, 2008.
Decided: Dec. 2, 2008.
Revised: Dec. 10, 2008.

Jennifer Kate Aaronson, Esquire, Wilmington, DE, for Appellant.

Loren C. Meyers, Esquire, of Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

BERGER, Justice:

In this appeal we consider whether Mapquest printouts of distances and driving times are admissible. The trial court admitted the Mapquest printouts, over appellant's objection, under the hearsay exception for "published compilations, generally used and relied upon by the public or by persons in particular occupations."[1] There was no evidence, however, to support the trial court's implicit finding that the Mapquest information is, in fact, generally used and relied upon. The only foundation for the introduction of this evidence was one witness's statement that he was familiar with Mapquest and had used it to determine the driving time between two points.

We recognize that many courts have taken judicial notice of facts derived from internet map sites. Arguably, information about street locations and driving distances is "not subject to reasonable dispute...."[2] However, in this case, the State focused on Mapquest information on driving time estimates, and the State offered nothing to demonstrate the reliability or general acceptance and use of those estimates. Accordingly, the trial court had no basis on which to conclude that the Mapquest printouts fall within the stated hearsay exception. Nonetheless, we affirm appellant's conviction, as we are satisfied that the error in admitting the Mapquest printouts was harmless beyond a reasonable doubt.

## FACTUAL AND PROCEDURAL BACKGROUND

1. D.R.E. 803(17).

2. D.R.E. 201(b).

On February 28, 2006, Jason Baker,[3] was 13 years old and home from school on suspension. At about 11:30 a.m., he was working outside his house, in Glasgow Pines, Delaware, when a man, later identified as Christopher Jianniney, approached him and began talking to him. Baker had seen Jianniney around the neighborhood, but Baker did not respond, and went into his house. At about 6:00 p.m., as Baker was taking trash from the back of the house to the curb, Jianniney approached him again. This time Jianniney offered Baker $40 if Baker would show his penis to Jianniney. Baker ran into his house and immediately called his mother, who came home right away. Baker and his mother drove around the neighborhood in an unsuccessful effort to find the car that Jianniney drove away in—a rusty colored pickup truck with a white roof and Maryland license plates. Baker and his mother then reported the incident to the police.

In 2006, Jianniney lived with his parents, and worked as a driver for Wilson Fuel Services, in Elkton, Maryland. On February 28, 2006, Jianniney punched in at 7:59 a.m., made eight fuel deliveries, then returned to Wilson Fuel for his lunch break. He went out for afternoon deliveries and punched out for the day at 4:08 p.m. According to his father, Jianniney was home, having dinner and helping to clean up after dinner, from about 5:15 p.m. until well after 6:00 p.m.

But two other witnesses placed Jianniney on the street where Baker lived at 6:00 p.m. One neighbor, Cheryl Besteder, testified that she saw Jianniney leave the house of another neighbor, Leland Brown, at about 5:30 p.m. and that she watched as he played basketball with some children on the street. Besteder had seen Jianniney in the neighborhood several times, and identified his car as being an older, brownish, pickup truck with a light top. Brown testified that Jianniney occasionally helped him work on his car, and that Jianniney was supposed to come work on his car on February 28th. Brown said that he never saw Jianniney that day, because Brown fell asleep after he came home from work.

Jerry Wilson, owner of Wilson Fuel, testified about Jianniney's work schedule on February 28th. Using Jianniney's fuel delivery tickets, Wilson provided estimates of the time it would take to drive to each location and deliver fuel. Wilson based those estimates on his familiarity with the roads and delivery locations. He testified that Jianniney would not have had time to get to Baker's house by 11:30 a.m. after completing his morning deliveries. On cross-examination, Wilson acknowledged that he was familiar with Mapquest and that he had used that website to determine how long it would take to get from one place to another. After the trial court admitted a batch of Mapquest printouts of driving directions and driving times, the State compared the Mapquest time estimates with Wilson's time estimates. In several instances, Wilson estimated twice as much time as the Mapquest estimate.

The jury convicted Jianniney of sexual solicitation of a child, and this appeal followed.

## DISCUSSION

The sole issue on appeal is whether the trial court abused its discretion, or violated Jianniney's constitutional right to confront witnesses, by admitting the Mapquest printouts. The trial court

---

**3.** The Court has assigned a pseudonym for the child victim and his family members pursuant to Supreme Court Rule 7(d).

admitted them under an exception to the hearsay rule for published compilations:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (17) Market reports; commercial publications. Market quotations, tabulations, lists, directories or other published compilations, generally used and relied upon by the public or by persons in particular occupations.[4]

To establish that the Mapquest printouts fall within this exception, the State elicited Woods' testimony that he was familiar with Mapquest and had used it.

If the Mapquest printouts only identified streets, driving routes, and driving distances associated with those routes, Jianniney probably would not have objected to their admission. A court may take judicial notice of facts that are "not subject to reasonable dispute [because they are] either (1) generally known ... or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[5] Numerous courts, in this and other jurisdictions, have taken judicial notice of facts derived from internet mapping tools when deciding questions concerning child custody, proper venue in a civil action, proof of venue in a criminal action, discovery disputes and compensation for travel expenses.[6]

Here, however, the Mapquest printouts were admitted for the truth of the website's driving time estimates. Yet the State offered no evidence that those estimates are relied upon by the public or

professional drivers. Woods testified that he had used Mapquest at some unspecified time. That hardly establishes general use and reliance by the public. Moreover, Mapquest expressly disclaims the accuracy of its information:

> THIS WEBSITE AND THE MATERIALS ARE PROVIDED WITH ALL FAULTS ON AN "AS IS" AND "AS AVAILABLE" BASIS. MAPQUEST, ITS LICENSORS AND OTHER SUPPLIERS DISCLAIM ALL WARRANTIES ... INCLUDING THE WARRANTIES THAT THE WEBSITE AND MATERIALS ARE FREE FROM DEFECTS....
>
> * * *
>
> Please note that the Materials may include technical inaccuracies or typographical errors. In addition, you may find that weather, construction projects, traffic conditions, or other events may cause road conditions to differ from the listed results.[7]

In sum, this record does not support a finding that the Mapquest travel time estimates may be admitted as an exception to the hearsay rule under D.R.E. 803(17).

We are satisfied, however, that the trial court's error in admitting this evidence was harmless beyond a reasonable doubt.[8] First, it was not particularly persuasive. Mapquest's estimates of driving times, as both Woods and Jianniney pointed out, failed to account for traffic, weather, time of day, or type of vehicle. Second, the Mapquest evidence, even if fully accepted

---

4. D.R.E. 803(17).

5. D.R.E. 201(b).

6. *See, e.g.: United States v. Kelly*, 535 F.3d 1229, 1237 (10th Cir.2008); *Saco v. Tug Tucana Corp.*, 483 F.Supp.2d 88, 93 (D.Mass. 2007); *Gordon v. Lewistown Hospital*, 272 F.Supp.2d 393, 429 (M.D.Pa.2003); *Coppola*

*v. Ferrellgas, Inc.*, 250 F.R.D. 195, 199 (E.D.Pa.2008); *Caithness Resources, Inc. v. Ozdemir*, 2000 WL 1741941 at *3 (Del.Ch.); *S.H. v. G.W.*, 2007 WL 3202484 (Del.Fam.Ct.).

7. Appellant's Appendix, A–45.

8. *Hawkins v. State*, 905 A.2d 747 (Del.2006).

by the jury, only established that it might have been possible for Jianniney to travel to Baker's neighborhood at 11:30 a.m. It did not address Jianniney's whereabouts at 6:00, when the crime was committed. Third, a disinterested witness saw Jianniney and his pickup truck on Baker's street at 6:00 p.m. Another disinterested witness testified that Jianniney was supposed to come by that day after work. This was not a close case, and the inadmissible evidence was only minimally prejudicial, if at all.

## CONCLUSION

Based on the foregoing, the judgment of the Superior Court is affirmed.