**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LATYSHA TEMPLE,

Defendant - Appellant.

No. 09-3289
(D. Ct. No. 07-CR-20168-JWL-20)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, Circuit Judge, and **SEYMOUR** and **TACHA**, Senior Circuit Judges.

---

In 2009, a jury found defendant-appellant Latysha Temple guilty of conspiracy to possess with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(A)(iii), and 846. On appeal, Ms. Temple challenges various aspects of her conviction and sentence. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Ms. Temple's conviction stems from her participation in a vast conspiracy to distribute cocaine and cocaine base in and around Kansas City, Kansas and Kansas City, Missouri from January 2006 to November 2007. The Drug Enforcement Administration began investigating the conspiracy in 2006 at the request of the Leavenworth, Kansas police department. After attempting various traditional investigative techniques (e.g., surveillance, confidential informants, and search warrants) and finding them to be ineffective means of uncovering the size and scope of the conspiracy, federal law enforcement officers decided to seek wiretaps.

From August to October 2007, officers submitted applications for wiretaps and for extensions of wiretaps on the phones of multiple suspected conspirators. One of the phones ultimately tapped by the officers belonged to Monterial Wesley, a man who was conducting a large-scale drug trafficking operation from his home in Leavenworth, Kansas. Officers soon learned that Mr. Wesley and Ms. Temple were engaged in a romantic relationship, and several calls intercepted from Mr. Wesley's phone suggested that Ms. Temple permitted him to store drugs and money at her home. For example, in one intercepted conversation, Mr. Wesley and a co-conspirator, Keith McDaniel, discussed how much cocaine Mr. McDaniel had left from what he purchased "the other day over at Tysha's house." In another intercepted conversation, co-conspirator Shevel Foy explained to Mr.

Wesley that he gave Mr. Wesley's "girl" "size 40 engines." Officers believed this was coded language meaning that Mr. Foy had given Ms. Temple $40,000 for two kilograms of cocaine. And in yet another conversation, Ms. Temple asked Mr. Wesley for money and he told her to take some out of what she took home the day before.

In addition, several intercepted calls suggested that Ms. Temple also engaged in reconnaissance and counter-surveillance on behalf of the conspiracy. For instance, officers intercepted a call in which Ms. Temple explained to Mr. Wesley that she had obtained information regarding the identity of people who had attempted to break into Mr. Foy's home to steal drug profits. In a subsequent intercepted call, Mr. Wesley and Ms. Temple expressed concern that Ms. Temple's home could be similarly burglarized, and Ms. Temple explained that she had found a better place for Mr. Wesley to keep his "bag."[1] And in another call, Mr. Wesley explained to Ms. Temple that he had a firearm in his car and therefore he wanted her to drive by another co-conspirator's home to see if the police were there.

On November 27, 2007, officers arrested Mr. Wesley while he was attempting to purchase five kilograms of cocaine at a car wash. During the arrest, officers seized a firearm from Mr. Wesley's vehicle.

_____

[1]Throughout the investigation, the officers intercepted multiple calls in which various conspirators referred to "bags." The officers concluded that "bags" was coded language for large amounts of money.

On February 1, 2008, Ms. Temple was charged, along with twenty-three other individuals, with conspiracy to possess with intent to distribute fifty grams or more of cocaine base and five kilograms or more of cocaine. Prior to trial, a number of Ms. Temple's co-defendants filed motions to suppress the evidence obtained from the wiretaps. Ms. Temple joined in several of these motions. The district court denied the motions to suppress on February 18, 2009, concluding that the wiretaps were lawful.

At trial, several government witnesses testified regarding Ms. Temple's role in the conspiracy. First, Officer Eric Jones described the numerous phone calls intercepted during the conspiracy investigation, including those implicating Ms. Temple. As discussed above, these calls suggested that Ms. Temple's primary role in the conspiracy was to store Mr. Wesley's drugs and money at her home. Next, Mr. Wesley's drug source, Thomas Humphrey, testified that Ms. Temple had accompanied Mr. Wesley to several drug transactions. Finally, Chauncey Anderson testified that he had seen Mr. Wesley hide cocaine in a closet at Ms. Temple's home.

Ms. Temple testified in her own defense, claiming that she never knowingly participated or assisted in any illegal activity. Specifically, Ms. Temple testified that she was not aware that Mr. Wesley routinely kept illicit profits at her home or that he was engaged in drug trafficking. She also stated that her conversation with Mr. Wesley regarding "bags" actually pertained to bags of Mr. Wesley's

clothes.  Finally, Ms. Temple testified that she never participated in any cocaine transactions and that Mr. Wesley never stored cocaine at her home.

At the conclusion of the evidence, Ms. Temple moved for a judgment of acquittal, challenging both venue and the sufficiency of the government's evidence.  The district court denied the motion and proceeded to instruct the jury on the multiple charges against the various defendants.  With respect to the conspiracy charge, the district court instructed the jury that it could convict the defendants as either principals or as aiders and abettors to the conspiracy.  Ms. Temple did not object to this or any other jury instruction.

The jury ultimately found Ms. Temple guilty of conspiracy.  The court then sentenced her to 151 months' imprisonment based in part on sentence enhancements for possession of a firearm and obstruction of justice.  This appeal followed.

## II.  DISCUSSION

A.    Legality of the Wiretaps

On appeal, Ms. Temple first argues that the district court erred in refusing to suppress the wiretap evidence because: (1) the officers failed to properly establish authorization in their wiretap applications; and (2) the affidavits in support of the wiretaps did not establish necessity.  These wiretap challenges are identical to those raised by Mr. Foy in Case No. 09-3314, *United States v. Foy*. Furthermore, Ms. Temple's arguments target the very same wiretap applications

as those at issue in *Foy*. Accordingly, we adopt our analysis from *Foy* and affirm the district court's refusal to suppress the wiretap evidence for the reasons stated in that opinion.

B.     Venue

Ms. Temple next contends that the government failed to establish that venue was proper in the District of Kansas for the conspiracy charge against her. Specifically, Ms. Temple argues that there was no evidence that she ever committed a criminal act in Kansas.

Although Ms. Temple is correct that the government failed to produce evidence that she ever committed a criminal act in Kansas, she incorrectly suggests that the government was required to produce such evidence in order to establish the District of Kansas as a proper venue for the conspiracy charge. Indeed, we have long held that when the crime charged is conspiracy, "venue as to prosecution of all members of the conspiracy lies either in the jurisdiction in which the conspiratorial agreement was formed or in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by *any of the conspirators*." *United States v. Rinke*, 778 F.2d 581, 584–85 (10th Cir. 1985) (quotations and alterations omitted) (emphasis added).

Here, the government produced ample evidence that various conspirators, namely Mr. Wesley, committed acts in furtherance of the conspiracy in the District of Kansas. Indeed, there is substantial evidence in the record, including

Mr. Wesley's guilty plea to the conspiracy charge, which demonstrates that Mr. Wesley kept a residence in Kansas and that he coordinated numerous drug transactions from that residence. Accordingly, venue was proper in the District of Kansas with respect to the conspiracy charge against Ms. Temple.

C.    Aiding and Abetting Jury Instruction

Ms. Temple next argues that the district court erred in instructing the jury that she could be convicted of conspiracy either as a principal actor or as an aider and abettor to the conspiracy. She does not, however, challenge the specific instruction provided by the district court, nor does she challenge whether the evidence presented by the government supported an aiding and abetting instruction. Rather, she contends that as a general rule "[o]ne cannot aid and abet a conspiracy."

Ms. Temple did not object to the aiding and abetting instruction below; therefore, we review her argument on appeal for plain error. *United States v. Bedford*, 536 F.3d 1148, 1153 (10th Cir. 2008). "Plain error exists only where (1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted).

We have held that aiding and abetting is not a separate criminal offense; it is an alternative charge in every substantive count regardless of whether it is alleged in the indictment. *See United States v. Lewis*, 594 F.3d 1270, 1286 (10th

Cir. 2010). Furthermore, we have expressly upheld both a jury instruction charging a defendant with aiding and abetting a conspiracy, *United States v. Willis*, 890 F.2d 1099, 1104–05 (10th Cir. 1989), and a defendant's actual conviction for aiding and abetting a conspiracy. *United States v. Langston*, 970 F.2d 692, 708 (10th Cir. 1992) ("[T]he evidence concerning Langston's conviction on the charge of conspiracy to manufacture amphetamine is not strong. Nevertheless, we feel it is sufficient to hold, as we do, that . . . it supports Langston's conviction as one who aided and abetted in the conspiracy."). In light of this precedent, we cannot say that the district court committed any error, let alone plain error, in instructing the jury on aiding and abetting the conspiracy. *See also United States v. Oreto*, 37 F.3d 739, 751 (1st Cir. 1994) ("[I]t appears that most if not all courts to consider the issue have held that a defendant may be convicted of aiding and abetting a conspiracy.").

D.     Sufficiency of the Evidence

Ms. Temple next argues that she should have been granted a judgment of acquittal because the government failed to produce sufficient evidence to convict her of conspiracy. We review the sufficiency of the evidence de novo. *Lewis*, 594 F.3d at 1274. The critical inquiry is whether, viewing the evidence in the light most favorable to the government, any reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* In conducting this inquiry, "we may neither weigh conflicting evidence nor consider the credibility of witnesses."

*United States v. Pappert*, 112 F.3d 1073, 1077 (10th Cir. 1997) (quotations omitted).

In order to convict a defendant as a principal actor in a conspiracy, the government must prove: (1) an agreement by two or more persons to violate the law; (2) knowledge of the objectives of the conspiracy; (3) knowing and voluntary involvement in the conspiracy; and (4) interdependence among co-conspirators. *United States v. Hutchinson*, 573 F.3d 1011, 1035 (10th Cir. 2009). To obtain a conviction for aiding and abetting a conspiracy, however, the government must prove: (1) the existence of a conspiracy; (2) the defendant associated herself with the conspiracy; and (3) the defendant acted with the intent to bring about the success of the conspiracy. *See Langston*, 970 F.2d at 705. When, as is the case here, the jury is instructed on both a principal and an aiding and abetting theory, we must affirm the conviction if the government presented sufficient proof that the defendant was either a principal or an aider and abettor. *Id.* at 706.

Following our comprehensive review of the record, we are satisfied that the government presented sufficient evidence to, at the very least, convict Ms. Temple of aiding and abetting the conspiracy. First, it is not disputed that the government established the existence of a conspiracy. Second, the government produced significant evidence of Ms. Temple's association with the conspiracy, including evidence that Ms. Temple: (1) accompanied Mr. Wesley on drug transactions; (2) stored drugs and drug profits at her home; (3) conducted at least

one drug transaction on Mr. Wesley's behalf; and (4) conducted reconnaissance and counter-surveillance on behalf of the conspiracy.  Third, despite Ms. Temple's testimony to the contrary, the jury could reasonably infer from this evidence that Ms. Temple undertook these actions with the intent to bring about the conspiracy's success.  Accordingly, we conclude that there was ample evidence on which a reasonable jury could convict Ms. Temple of aiding and abetting the conspiracy.

E.      Sentence

Ms. Temple's final arguments on appeal relate to her 151-month prison sentence.  Specifically, she contends that the district court erred in applying enhancements for possession of a firearm and obstruction of justice.  We review the sentencing court's legal conclusions de novo and its factual findings for clear error.  *United States v. Cherry*, 572 F.3d 829, 831 (10th Cir. 2009).

1.      *Firearm Enhancement*

Section 2D1.1(b)(1) of the Guidelines provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed."  The Application Notes explain that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, cmt. n.3; *see also United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001).  The enhancement applies when a co-defendant possessed a firearm, so long as possession was reasonably

foreseeable to the defendant. *See United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir. 1991) (holding that under §§ 1B1.3(a)(1)(B) and 2D1.1(b)(1), a defendant may be held accountable for reasonably foreseeable weapons possession by a co-defendant). *But see United States v. Goddard*, 929 F.2d 546, 548 (10th Cir. 1991) (approving of "reasonably foreseeable" approach but suggesting that foreseeablity is not required in conspiracy cases).

The government bears the initial burden of showing possession by a preponderance of the evidence. *Heckard*, 238 F.3d at 1233. "The government's initial burden is met when it shows that a weapon was located near the general location where at least part of a drug transaction occurred." *Id.* (quotations omitted). If the government meets its initial burden, the defendant must demonstrate that it is clearly improbable that the weapon was connected with the offense. *Id.*

In this case, it is undisputed that Mr. Wesley was arrested as he attempted to purchase five kilograms of cocaine and that officers seized a firearm from Mr. Wesley's vehicle at the time of his arrest. Thus, the government met its initial burden of establishing possession by a preponderance of the evidence. Ms. Temple, however, does not point to anything in the record which would suggest that it was clearly improbable that the firearm discovered in Mr. Wesley's vehicle was connected with the drug trafficking conspiracy. Rather, Ms. Temple argues that she did not actually know that he possessed them in connection with drug

trafficking. Ms. Temple's subjective knowledge (or lack thereof) is insufficient to meet her burden of "clear improbability." Indeed, we have observed that "guns are 'tools of the trade' in the distribution of illegal drugs," and we have noted that "it is highly unlikely the presence of [a] handgun in a car containing a large amount of crack cocaine was merely coincidental." *United States v. McKissick*, 204 F.3d 1282, 1293 (10th Cir. 2000).

Moreover, Ms. Temple concedes that she was aware Mr. Wesley sometimes possessed firearms; thus, as a matter of law, she may be held accountable at sentencing for Mr. Wesley's firearm possession. *See Underwood*, 938 F.2d at 1090. Accordingly, we conclude that the district court did not err in enhancing Ms. Temple's sentence pursuant to § 2D1.1(b)(1).

2.      *Obstruction Enhancement*

Section 3C1.1 of the Guidelines provides for a two-level enhancement of a defendant's offense level when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and [] the obstructive conduct related to [] the defendant's offense of conviction . . . ." This enhancement accounts for perjured testimony offered by a defendant at trial, which we have defined as "false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Anderson*, 189 F.3d 1201, 1213 (10th Cir. 1999) (quotations omitted).

"The mere fact that a defendant testifies to his or her innocence and is later found guilty by the jury does not automatically warrant a finding of perjury." *United States v. Markum*, 4 F.3d 891, 897 (10th Cir. 1993). Rather, "in order to apply the § 3C1.1 enhancement, it is well-settled that a sentencing court must make a specific finding—that is, one which is independent of the jury verdict—that the defendant has perjured herself." *Anderson*, 189 F.3d at 1213 (quotations omitted). In other words, "the trial court must specify which portion of the defendant's testimony it considers to be false." *Markum*, 4 F.3d at 897.

Here, in applying the obstruction enhancement, the sentencing court stated:

> I believe that Ms. Temple perjured herself at trial, that she intentionally testified falsely on material matters in order to affect the outcome of the case. Ms. Temple denied that . . . she knew that Mr. Wesley was involved in drug dealing and [testified] that she didn't help him in any way with his drug dealing. I believe that was false when she said it at trial . . . I'm satisfied that Ms. Temple was well aware of what Mr. Wesley was doing and that she was participating in it herself by way of assisting him by driving him to transactions, loaning a car, or storing things at her house . . . .

Given the significant amount of evidence against Ms. Temple, which is summarized above, we cannot say that the district court clearly erred in finding that Ms. Temple committed perjury by testifying that she was completely oblivious to Mr. Wesley's drug trafficking activities. Accordingly, we affirm the district court's application of § 3C1.1.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM Ms. Temple's conviction and sentence.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge