**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

FRANKLIN GOODWIN, JR.,

        Defendant - Appellant.

No. 09-3316
(D.C. No. 2:07-CR-20168-JWL-24)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, and **SEYMOUR** and **TACHA**, Senior Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-appellant Franklin Goodwin, Jr., appeals from his convictions for conspiracy to possess with intent to distribute fifty grams or more of cocaine base and five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1),

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(b)(1)(A)(ii), (b)(1)(A)(iii), and § 846, and the use of a communication device to facilitate a drug-trafficking crime in violation of 21 U.S.C. § 843(b). We take jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. Goodwin's convictions stem from his participation in a vast conspiracy to distribute cocaine and cocaine base in and around Kansas City, Kansas and Kansas City, Missouri from January 2006 to November 2007. Generally, the conspiracy involved Monterial Wesley and Shevel Foy pooling their money together to purchase large quantities of cocaine from Thomas Humphrey. Mr. Wesley and Mr. Foy then sold the cocaine to mid-level dealers, including Henry Grigsby, who sold it to street-level dealers like Mr. Goodwin.

On February 1, 2008, Mr. Goodwin and twenty-three other individuals were charged by superseding indictment with one count of conspiracy to possess more than fifty grams of cocaine base and five kilograms of cocaine with intent to distribute. Mr. Goodwin was also charged with using a cellular telephone in furtherance of that conspiracy.

At trial, several government witnesses testified regarding Mr. Goodwin's role in the conspiracy. First, Officer Eric Jones testified that he interviewed Mr. Goodwin after his arrest, and that during the interview, Mr. Goodwin admitted to purchasing between one and two ounces of cocaine from Mr. Grigsby on

approximately six to eight occasions.  Officer Jones noted that these amounts are consistent with distribution as opposed to personal use.  Officer Jones's testimony regarding the interview was later corroborated by the testimony of Officer Timothy McCue, who was also present during the interview.

Additionally, Officer Jones identified Mr. Goodwin's voice on four phone calls which were played for the jury.  In the first call, Mr. Goodwin sought to purchase 2 1/4 ounces of cocaine from Mr. Grigsby.  In the second call, Mr. Goodwin inquired whether Mr. Wesley had any cocaine and they discussed the poor quality of cocaine Mr. Goodwin had previously purchased.  In the third call, Mr. Goodwin sought to purchase cocaine from Mr. Grigsby, Mr. Grigsby informed Mr. Goodwin that he only had crack cocaine, and Mr. Goodwin indicated that he might still be interested in making a purchase.  In the final call, Mr. Goodwin again sought to purchase 2 1/4 ounces of cocaine from Mr. Grigsby.

Consistent with the testimony of Officers Jones and McCue, Mr. Grigsby testified that he sold cocaine to Mr. Goodwin, although he indicated that the amounts ranged from a half ounce to 2 1/4 ounces.  Mr. Grigsby also testified that while he did not care what Mr. Goodwin did with the drugs he purchased, based on the quantities, he assumed Mr. Goodwin was selling them.

Finally, Keenan Ringgold, another co-defendant, testified that on at least four to five occasions, Mr. Goodwin purchased up to 3.5 grams of crack cocaine from him.

Ultimately, the jury found Mr. Goodwin guilty on both the conspiracy and communication-device counts. After the jury's verdict, Mr. Goodwin filed a motion for acquittal or, in the alternative, new trial, which the district court denied. The district court sentenced Mr. Goodwin to a mandatory minimum sentence of life imprisonment on the conspiracy count and forty-eight months' imprisonment on the communication-device count to run concurrently. Mr. Goodwin now appeals both his conviction and his sentence.

## II. DISCUSSION

A.  Conspiracy

Mr. Goodwin first challenges the sufficiency of the evidence to support his conviction for conspiracy. We review de novo whether the government presented evidence sufficient to support a criminal conviction. *United States v. Wardell*, 591 F.3d 1279, 1286 (10th Cir. 2009). "Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Willis*, 476 F.3d 1121, 1124 (10th Cir. 2007) (quotations omitted). In conducting our analysis, we consider both direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom, and "[w]e will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury." *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) (quotations omitted).

To obtain a conspiracy conviction, the government must prove: (1) an agreement by two or more persons to violate the law; (2) knowledge of the objectives of the conspiracy; (3) knowing and voluntary involvement in the conspiracy; and (4) interdependence among co-conspirators. *United States v. Hutchinson*, 573 F.3d 1011, 1035 (10th Cir. 2009). "[I]nterdependence exists where each co-conspirator's activities constituted essential and integral steps toward the realization of a common, illicit goal." *United States v. Edwards*, 69 F.3d 419, 431 (10th Cir. 1995) (internal quotations omitted). The interdependence element, however, does not require that the government prove "the conspirators know the identities or details of each scheme or have connections with all other members of the conspiracy." *Id*. (quotations omitted).

Mr. Goodwin argues that the government failed to demonstrate interdependence between himself and the other conspirators because it established only that he bought unremarkable quantities of drugs from members of the conspiracy, some of which he resold.[1] In the same vein, Mr. Goodwin contends

---

[1]Although Mr. Goodwin argued in his opening brief that he had, at most, a buyer-seller relationship with the conspirators and thus was not a part of the conspiracy under the "buyer-seller rule," he appears to have abandoned that argument in his reply brief. Indeed, Mr. Goodwin no longer seems to contest that he bought the drugs for resale. Because the buyer-seller rule does not apply when the defendant purchases drugs for resale, *see United States v. Ivy*, 83 F.3d 1266, 1285–86 (10th Cir. 1996) ("[T]he purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy."), to the extent Mr. Goodwin maintains his buyer-seller rule argument, it is plainly without merit.

that he could not have been integral to the conspiracy because he easily could have been replaced by another low-level dealer. More generally, Mr. Goodwin argues that "something more than mere purchase for resale" is required before a drug conspiracy conviction can properly lie.

Viewed in the light most favorable to the government, the evidence in this case shows that Mr. Goodwin purchased at least sixteen ounces of cocaine from Mr. Grigsby and additional quantities from Mr. Ringgold, which he then resold. Furthermore, Mr. Goodwin was familiar with several other members of the conspiracy, and on at least one occasion, he sought to purchase cocaine directly from Mr. Wesley, one of the leaders of the conspiracy. On that occasion, Mr. Goodwin also complained to Mr. Wesley about the quality of a separate prior purchase. Finally, although the evidence demonstrates that Mr. Goodwin handled smaller drug quantities than some of the other conspirators, he could have nevertheless been an integral part of the conspiracy, as the jury found. Indeed, many drug conspiracies cannot succeed without street-level dealers like Mr. Goodwin. *See United States v. Dickey*, 736 F.2d 571, 582 (10th Cir. 1984) ("[W]here large quantities of drugs are being distributed, each major buyer may be presumed to know that he is a part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know . . . Even the remote members of the conspiracy [are] undeniably dependent on the success of each transaction to ensure the continuing prosperity of the overall

scheme."); *see also United States v. Ivy*, 83 F.3d 1266, 1285–86 (10th Cir. 1996) (noting that "street-level, mid-level, and other distributors, who [] intend to redistribute drugs for profit . . . further[] the objective of the conspiracy.").

Based on this evidence, it was reasonable for the jury to conclude that Mr. Goodwin, though a low-level participant, was nonetheless integral to the drug conspiracy. Accordingly, we conclude that the evidence is sufficient to support Mr. Goodwin's conspiracy conviction.

B.    Co-Conspirator Statements

Mr. Goodwin also argues that the telephone conversations were improperly admitted as co-conspirator statements. "We review the district court's decision to admit statements of a co-conspirator for abuse of discretion." *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999).

"Co-conspirator statements are not considered hearsay under Rule 801(d)(2)(E) and may properly be admitted if the court finds: 1) a conspiracy existed; 2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and 3) the statement was made in the course of and in furtherance of the conspiracy." *Id.* (quotations omitted). Here, Mr. Goodwin contends only that he was not a member of the conspiracy and thus the statements were improperly admitted against him. We reject this argument because, as we hold above, there was sufficient evidence to support Mr. Goodwin's conviction for conspiracy.

Mr. Goodwin also asks this court to require district courts to hold a *James* hearing[2] prior to the admission of co-conspirator statements.  We decline to do so. Although we have repeatedly indicated our strong preference for *James* proceedings when the government relies on co-conspirator statements, it remains within the district court's discretion to either hold such a hearing or, as the district court did in this case, provisionally admit the evidence subject to the eventual laying of a sufficient foundation.  *See United States v. Gonzalez-Montoya*, 161 F.3d 643, 648 (10th Cir. 1998); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

C.    Jury Instruction

Mr. Goodwin next argues that the district court erred in instructing the jury that he could be convicted of conspiracy either as a principal actor or as an aider and abettor to the conspiracy.  He does not, however, challenge the specific instruction provided by the district court, nor does he challenge whether the evidence supported the instruction.  Instead, Mr. Goodwin asks this court to categorically "reject the notion that one can aid or abet a conspiracy."  Mr. Goodwin's argument is substantially similar to that of his co-defendant, Latysha Temple, in Case No. 09-3289, *United States v. Temple*.  Accordingly, we adopt our analysis from *Temple*, and affirm the district court's instruction to the jury for the reasons stated in that opinion.

---

[2]*See United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979).

D.    Motion for New Trial

Mr. Goodwin also argues that the district court abused its discretion by denying his motion for a new trial.  He bases this argument on his contentions that: (1) there was insufficient evidence to support his conspiracy conviction; and (2) the aiding and abetting jury instruction was improper.  Because we reject the underlying arguments, we hold that the district court correctly denied Mr. Goodwin's motion for a new trial.

E.    Severance

Mr. Goodwin also contends that the district court erred in failing to sever his trial from that of his co-defendants.  Because Mr. Goodwin failed to file a motion to sever with the district court, we review this claim for plain error. *United States v. Iiland*, 254 F.3d 1264, 1269 (10th Cir. 2001).

The decision whether to grant a severance is within the discretion of the district court.  *United States v. Olsen*, 519 F.3d 1096, 1102 (10th Cir. 2008).  The Supreme Court has noted that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  Indeed, "we recognize a presumption in a conspiracy trial that coconspirators charged together should be tried together." *United States v. Wardell*, 591 F.3d 1279, 1300 (10th Cir. 2009).  Accordingly, when challenging the denial of severance, a defendant bears the heavy burden of demonstrating actual prejudice which outweighs the expense and inconvenience of separate

trials. *United States v. Hutchinson*, 573 F.3d 1011, 1025 (10th Cir. 2009).

Here, Mr. Goodwin contends that the joint trial caused him prejudice because of the disparity between the minimal incriminating evidence introduced against him and the overwhelming incriminating evidence introduced against his co-defendants which did not relate to him. This argument, without more, is insufficient to satisfy Mr. Goodwin's burden. Indeed, "the nearly insuperable rule in this circuit is that a defendant cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against [himself]." *Wardell*, 591 F.3d at 1300. Because Mr. Goodwin argues only that he was prejudiced by the quantitative disparity between the evidence presented against him and the evidence presented against his co-defendants, we cannot say that the district court committed any error, let alone plain error, in failing to grant him a severance. *See United States v. Hack*, 782 F.2d 862, 871 (10th Cir. 1986) ("[A] mere disparity in the evidence from a quantitative standpoint against each defendant in a conspiracy case, without more, provides no justification for severance.").

F.    Lack of Venue

Mr. Goodwin also contends that the government failed to adduce sufficient evidence to establish venue in Kansas for the § 843(b) communication-device count. Although venue is not a substantive element of a § 843(b) offense, it must be proven in every criminal case. *United States v. Kelly*, 535 F.3d 1229, 1233

(10th Cir. 2008).  Unlike the other elements which must be proven beyond a reasonable doubt, venue need only be proven by a preponderance of the evidence. *United States v. Miller*, 111 F.3d 747, 749–50 (10th Cir. 1997).  "Whether the government presented sufficient evidence to support a jury's finding on venue is a question of law," which we review de novo.  *Kelly*, 535 F.3d at 1232; *see also United States v. Hamilton*, 587 F.3d 1199, 1205 n. 3 (10th Cir. 2009).  "In reviewing whether venue lies in a particular district . . . [we] view[] the evidence in the light most favorable to the government and mak[e] all reasonable inferences and credibility choices in favor of the finder of fact."  *Kelly*, 535 F.3d at 1232–33.

To obtain a conviction under 21 U.S.C. § 843(b), the government must prove that the defendant: (1) knowingly or intentionally (2) used a telephone or other communications facility (3) to commit, cause or facilitate the commission of a drug felony.  *United States v. Milton*, 62 F.3d 1292, 1294–95 (10th Cir. 1995).  For § 843(b) offenses, venue is appropriate in both the district where the call was made and in the district where it was received.  *See, e.g.*, *Andrews v. United States*, 817 F.2d 1277, 1279 (7th Cir. 1987) (holding that for purposes of § 843(b), "the crime is committed both where the call originates and where it is received"); *United States v. Barnes*, 681 F.2d 717, 724 (11th Cir. 1982) (same).

In its order denying Mr. Goodwin's motion for judgment of acquittal, the district court summarized the evidence which supported venue in this case:

> Mr. Goodwin, Mr. Trinkle, and Mr. Grigsby all lived in Leavenworth, Kansas. As to Mr. Goodwin and Mr. Trinkle, no evidence was ever presented that they left Leavenworth to transact business . . . In the phone call that forms the basis for Count 11, Mr. Goodwin asked Mr. Grigsby for a two-way soft. Mr. Grigsby then explained that he would call Mr. Goodwin back as soon as he got in town, and Mr. Goodwin asked what the ticket or price was so he could have it ready when Mr. Grigsby arrived. From this conversation, the jury could have inferred that the town Mr. Grigsby referred to was Leavenworth, and consequently, Mr. Goodwin, at the very least, was in Kansas when the call was made.

*United States v. Wesley*, 649 F. Supp. 2d 1232, 1247 (D. Kan. 2009) (citation omitted).

Mr. Goodwin does not dispute the district court's summary of the evidence or its interpretation of the phone call. Instead, Mr. Goodwin argues that the government could have had Mr. Grigsby testify concerning either his or Mr. Goodwin's location at the time of the call or offered telephone records identifying Mr. Goodwin's location at the time of the call. In the absence of such evidence, Mr. Goodwin argues, the jury was left "to rely on assumptions and conjecture to fill the government's evidentiary gap." This argument is unavailing.

As we have repeatedly held, the government is not required to introduce direct evidence concerning venue. *Kelly*, 535 F.3d at 1235. Rather, "[t]he government may prove [venue] by a preponderance of direct *or* circumstantial evidence." *Id.* (emphasis in original) (citing 2 Charles Alan Wright, Federal Practice & Procedure § 307, at 347 (3d ed. 2000) ("[l]ike any other fact, venue may be proved by circumstantial evidence.")). Having reviewed the record, we

are satisfied that the evidence, as set forth by the district court, was sufficient for a reasonable jury to infer that Mr. Goodwin was in Kansas at the time he made or received the phone call in question. Accordingly, venue was appropriate in Kansas for the § 843(b) count.

G.  Life Sentence

Finally, Mr. Goodwin argues that his life sentence for a first violation of 21 U.S.C. § 841 constitutes cruel and unusual punishment. As Mr. Goodwin acknowledges, however, we are bound by our precedent which holds that the imposition of a life sentence for a first-time felony conviction of possession with intent to distribute fifty grams or more of cocaine does not violate the Eighth Amendment. *See United States v. Williams*, 576 F.3d 1149, 1165 (10th Cir. 2009) (citing *Harmelin v. Michigan*, 501 U.S. 957, 961 (1991); *United States v. McKneely*, 69 F.3d 1067, 1080–81 (10th Cir. 1995)).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge